## BEATRICE BISSELL *vs.* JOHN BISSELL.

In this State, so far as its validity in law is concerned, marriage is a civil contract, and no religious form or ceremony of any kind is essential to its validity.

All that is requisite is that the parties should be capable of contracting, and that they should actually contract to be man and wife.

A mere agreement to marry at some future time, followed by cohabitation, will not constitute a marriage; but an agreement made in the present tense, whereby the parties assume towards each other the marital relation, is an actual marriage.

This agreement may be written or verbal, with or without witnesses, and may be proved like any other contract. When proved to the satisfaction of a court of justice, it constitutes a lawful marriage.

The wife being, by recent legislation, made a competent witness in actions in which her husband is a party, her testimony, if corroborated and entitled to credit, is sufficient to establish the marriage.

Upon such testimony, the court may, in an action brought for that purpose by the wife against the husband, declare the plaintiff to be the lawful wife of the defendant, and their issue legitimate, and adjudge a limited divorce and alimony on the ground of abandonment, with costs and expenses of the litigation.

A man and woman, being engaged to be married, the former stated to the latter that he did not believe in marriage ceremonies, and wished her to waive the ceremony, saying that a marriage without it would be perfectly valid. She finally consented to waive any ceremony, and fixed a day for the marriage. On that day, while they were riding together in a carriage, he placed a ring upon her finger, saying: "This is your wedding ring; we are married." She received the ring as a wedding ring. He then said: "We are married, just as much as Charles is to his wife, (referring to his brother and his sister-in-law.) I will live with you, and take care of you, all the days of my life, as my wife." She assented to this, and they went to a house where he had previously engaged board for "himself and wife," where they lived together, as man and wife, for about five weeks; he treating her as his wife, and addressing and speaking of her as such. *Held* that this was a valid marriage.

ACTION by the plaintiff, claiming to be the wife of the defendant, for a separation from bed and board, on the ground of abandonment.

*C. A. Rapallo* and *A. C. Brown,* for the plaintiff.

*T. F. Donovan* and *Henry Stanton,* for the defendant.

GEO. G. BARNARD, J. This is an action for a limited divorce on the ground of abandonment, under subdivision 3, section 51, article 4, title 1 of part 2 of the Revised Statutes. The allegation of abandonment is not contested, but the defense rests upon a denial of the marriage.

The plaintiff was examined as a witness in her own behalf, and the substance of her testimony is that she made the acquaintance of the defendant in January, 1867, while she was residing in Brooklyn, with the defendant's brother and his wife, in the capacity of nurse. The defendant resided at the same place, and there commenced paying attentions to her, which continued for several months, and resulted in an offer of marriage, in the latter part of June, 1867, which, after some hesitation on the part of the plaintiff, by reason of the difference in social station between her and the defendant, was finally accepted by the plaintiff. Very soon after the engagement, the defendant stated to the plaintiff that he did not believe in marriage ceremonies; that they might be legally married without any ceremony; that there were many such marriages, and he wished her to waive the ceremony. This, at first, she refused to do, but a series of conversations followed, during which the subject was discussed, the defendant urging his views, and contending that the marriage he proposed would be perfectly valid under the laws of the State of New York, and that they would be as validly married as if three clergymen should marry them, and as much man and wife as his brother and his wife were.

The defendant's arguments finally prevailed, and about the 1st of July the marriage day was appointed. The time fixed was the 15th of July. The defendant furnished the plaintiff with means to procure her marriage outfit, and, with the assistance of her married sister, Mrs. Stiesi, the plaintiff made her preparations for the marriage. On the 15th of July, the day appointed, the plaintiff left her sister's house, stating to her that she was going to be mar-

Bissell *v.* Bissell.

ried. She met the defendant in New York, and they proceeded to Central Park, where they took an open carriage, and while in the carriage the defendant produced a plain gold wedding ring, which had been made from another ring that she had given him for the purpose, about a fortnight previous. He placed the ring upon her finger, stating, "This is your wedding ring; we are married." She received the ring as a wedding ring. He then said: "We are married, just as much as Charles is to his wife, (referring to his brother and his sister-in-law.) I will live with you, and take care of you all the days of my life, as my wife." To this she assented, and they thereupon went to No. 110 Waverly Place, where he had previously engaged board for himself and wife. They were met at the door by the sister of Mrs. St. Clair—the lady of the house—who asked if they were Mr. and Mrs. Bissell, and the defendant answered in the affirmative. They lived there together, as man and wife, for about five weeks. During all the time the defendant treated her as his wife; addressed her, and spoke of her, as such.

Some time in August, the defendant, on the pretense of having met with pecuniary losses, induced the plaintiff to go to live with her aunt until his circumstances should improve. Since then he has abandoned and repudiated her, and entirely neglected to provide for either her or his child, which was born about May, 1868. Shortly before abandoning her, he induced her to sign a paper, drawn by himself, stating that no marriage ceremony had been performed between them.

The defendant was also examined as a witness, and testified that he never agreed to take the plaintiff as his wife; but alleged that it was agreed that she should live with him as a mistress, and that he should pass her off as his wife. And he alleged that he gave her the wedding ring so as to deceive other people, and not excite the suspicion that she was not his wife, as he feared that if they found

out, in the boarding house, that they were not married, they would turn them out.

There is no pretense that up to the time of the alleged marriage there had been any illicit intercourse between the parties.

The testimony of the plaintiff is corroborated by Mrs. St. Clair, who kept the boarding house; by her sister and niece, who live there, and who prove that before coming there to reside, the defendant engaged board for himself and wife. That while there they lived together as man and wife, treating and speaking of each other as such. Also by the testimony of Mr. and Mrs. Stiesi, who testify that the defendant assured them that, although no ceremony had been performed, he had married the plaintiff, and she was his wife and entitled to bear. his name, and that if they had children they should be entitled to bear his name; and that they were as much man and wife as Mr. and Mrs. Stiesi, whose marriage had been solemnized in the usual form.

There can be no doubt that the testimony of the plaintiff proves an actual and valid marriage relation between the plaintiff and defendant. The Revised Statutes declare that "marriage, so far as its validity in law is concerned, shall continue in this State a civil contract, to which the consent of parties capable of contracting shall be essential." And it is well settled that no religious ceremony or form, of any description, is essential to the validity of a marriage. All that is requisite is, that the parties should be capable of contracting, and that they should actually contract to be man and wife. A mere agreement to marry at some future time, followed by cohabitation, will not constitute a marriage; but an agreement made in the present tense, whereby the parties assume towards each other the marital relation, is an actual marriage. This agreement may be written or verbal, with or without witnesses, and may be proved like any other con-

Bissell *v.* Bissell.

tract. When proved to the satisfaction of a court of justice, it constitutes a lawful marriage.

The cases cited by the plaintiff's counsel abundantly establish these propositions. (*Bishop on Mar. & Div.* §§ 78, 162. *Fenton* v. *Reed,* 4 *John.* 52. *Clayton* v. *Wardell,* 4 *N. Y. Rep.* 230. *Ferrie* v. *Public Adm'r,* 3 *Bradf.* 151. *Tummalty* v. *Tummalty, Id.* 369. *Grotgen* v. *Grotgen, Id.* 373. *Rose* v. *Clark,* 8 *Paige,* 574. *Matter of Taylor,* 9 *id.* 611. *Cheney* v. *Arnold,* 15 *N. Y. Rep.* 345. *Hayes* v. *The People,* 25 *id.* 390.)

In cases affecting the legitimacy of issue, rights of succession to property, and many other cases, such a contract may be proved by circumstantial evidence, by admissions of the parties, by their living together as man and wife, &c. But there is another class of cases, such as prosecutions for bigamy, *crim. con.*, &c., in which there must be direct evidence of the actual marriage. By actual marriage is meant, not the solemnization before a minister or magistrate—for, as has already been shown, no such solemnization is requisite—but what is intended is, that the actual making of the marriage contract, between the parties, must be proved by direct evidence, and not left to be inferred from circumstances, admissions and the like.

Until, by recent legislation, the wife was made a competent witness in actions in which her husband is a party, it is evident that where a marriage of this description was contracted in the absence of any witness, there was no means of furnishing the direct proof required in this class of cases, and offenses of this description might be committed with comparative impunity. But now, the wife being made a competent witness, her testimony, if corroborated and entitled to credit, is sufficient to establish the marriage.

The only question in this case, it seems to me, is as to the credibility to be attached to the testimony of the plaintiff and defendant respectively.

The plaintiff stands unimpeached and uncontradicted, except by the defendant, while she is corroborated by the testimony of Mrs. St. Clair, Miss Birch, Miss Knight and Mr. and Mrs. Stiesi. The elaborate cross-examination to which she was subjected failed to disclose any material discrepancy in her evidence, and nothing was shown to cast suspicion upon her truthfulness.

Opposed to her evidence are the denials of the defendant. His testimony is in direct conflict, not only with that of the plaintiff, but also with that of Mr. and Mrs. Stiesi. Independent of this direct contradiction by two apparently respectable witnesses, not parties to the litigation, the position assumed by the defendant, in his own testimony, is not one which commends him to consideration. According to his own testimony he was trying to seduce the plaintiff. The circumstances of the case—even those detailed by him—indicate that she was a virtuous girl; and he himself testifies that at first the shameful proposals, which he asserts he made, were rejected by her in such a manner as to lead him to suppose that they would never meet again. The defendant now comes into court, stating that, notwithstanding this rebuff, he persisted in his infamous attempt, and finally succeeded in accomplishing her ruin; and he admits that without cause he subsequently abandoned her and contracted a marriage with another party, who, it is proved, was fully cognizant of the pendency of this action, having been a witness in the defendant's behalf, in one of its preliminary stages. And now the defendant, confessing himself capable of the depravity with which he thus charges himself, asks to be credited as a reliable and candid witness in his own behalf.

Considering the impeachment of his moral character which is furnished by the defendant's own testimony, the direct contradiction of his statements by at least two credible witnesses besides the plaintiff, in a very material point—namely, as to his declaration to them that he was

---

Bissell *vs.* Bissell.

---

lawfully married to the plaintiff—and his admissions and conduct towards the plaintiff, the court feels warranted in discrediting and rejecting the defendant's version of the transaction, and is satisfied and decides that an actual marriage was contracted between the parties, as testified to by the plaintiff.

If this be so, there is no reason why the defendant should not be held to the consequences of his acts; and if, while endeavoring to accomplish a seduction, he has blundered into matrimony, he has no one but himself to blame. If the practice is as common as the defendant alleges, of men passing off their mistresses as their wives, and allowing them to bear their names without any marriage contract, it is time that they should learn the risks to which they expose themselves in thus trifling with the marriage institution, and that a check should be put upon practices so dangerous to the good order of society.

There should be a decree declaring the plaintiff to be the lawful wife of the defendant, and their child to be legitimate, and adjudging a limited divorce and alimony, with costs and reasonable expenses of the litigation; and the temporary alimony.allowed by Judge INGRAHAM should be increased.

[NEW YORK SPECIAL TERM, November 1, 1869.   *Geo. G. Barnard,* Justice.]