STATE vs. CHARLES L. TILLINGHAST.

PROVIDENCE—OCTOBER 12, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Criminal Law.  Marriage.  Evidence.  Husband and Wife.*

In a criminal prosecution, while evidence of cohabitation, of the conduct
of the parties in holding themselves out as husband and wife, having
children, etc., is not enough to establish a marriage, yet such evidence is
admissible by way of corroboration of the existence of a marriage.

(2)  *Criminal Law.  Evidence.  Marriage.  Non-Support.*

In a criminal complaint for non-support, complainant testified that she
was married to defendant by K., a justice of the peace, who gave her a
certificate which was produced by her.  It was never recorded, nor was
there any record of the marriage.  The word "copy" appeared on the
paper.  Defendant and K. subsequently prepared and caused to be re-
corded a bogus marriage certificate, for the purpose of having the record
show a date for the marriage prior to the birth of the first child of the
parties.  Defendant denied any marriage with complainant.
*Held,* that the certificate was properly admitted.

CRIMINAL COMPLAINT for non-support.  Heard on petition
of defendant for new trial, and petition denied.

TILLINGHAST, J.   This is a criminal complaint charging the
defendant with neglect to provide, according to his means, for
the support of his wife and children.

At the trial of the case in the Common Pleas Division the
defendant was found guilty, whereupon he petitioned for a new
trial, and the case is now before us on that petition.

The grounds upon which the petition is based are (1) that
the trial court allowed improper evidence to be admitted against
the defendant's objection; and (2) that the verdict was against
the evidence.

As it appears from the evidence introduced, as well as from
the brief presented by defendant's counsel, that the only issue
submitted to the jury was whether the defendant was ever
lawfully married to the woman for whom he was charged with
having neglected to provide, we are only called upon to decide
whether the evidence introduced was admissible and pertinent

to this issue and was sufficient to warrant the jury in finding that the defendant was the lawful husband of Annie D. Tillinghast, who is the real complainant in the case, and who will hereinafter be called the complainant.

She testifies that on July 30, 1880, she was married to the defendant at the home of her parents in Webster, Mass., by one Alvine V. Kibby, a justice of the peace, who resided in that place, and that a few days afterwards he gave her a certificate of the marriage. This certificate was produced by her at the trial and put in evidence. It shows on its face that she was married to the defendant as above stated. This paper was never recorded, nor is there any record of the marriage performed by said Kibby.

(2)   The defendant objected to the introduction of this paper on the ground that the word "copy" appears thereon, and also on the ground that, as it is all in the same handwriting, it is evident that it is not the original document.

In view of the positive testimony of the complainant, however, that it is the same identical paper which was given to her by said justice of the peace, Kibby, for the purpose of showing that she was married, and also in view of the subsequent conduct of said Kibby and the defendant in fixing up and causing to be recorded the bogus marriage certificate, which will hereinafter be more particularly referred to, we think the paper was properly admitted in evidence.

The complainant produced a certificate from the secretary of the Commonwealth of Massachusetts, duly sealed and executed, showing that at the time when the marriage in question is claimed to have taken place Alvine V. Kibby was a duly qualified justice of the peace for the said commonwealth. And here it may be added that it was admitted by defendant's counsel at the trial that under the laws of Massachusetts a justice of the peace was competent to perform a marriage ceremony; and no question was made as to the legality of the marriage ceremony in question, if one was actually performed.

The defendant admits that he procured the attendance of said Kibby at the house where the complainant lived, that he paid for the use of the horse and carriage by which he was

conveyed there, that certain formalities were gone into by the justice by the way of asking questions of the defendant and Miss Rawson, now Mrs. Tillinghast, as she claims, and that answers were given thereto; but he denies that any marriage ceremony in fact took place, or that he was then or at any other time married to the complainant.

His version of the transaction is this, namely: That Miss Rawson was the mother of an illegitimate infant child, and that in order to shield her and her offspring from shame, and also to shield himself, he induced said Kibby to go to the house and prepare a paper or papers which would have that effect, but at the same time would not have the effect of uniting the parties in marriage; and that, in pursuance of this fraudulent agreement, a paper, of which the following is a certified copy, duly attested, was prepared and put on record by said Kibby in the town clerk's office of said town of Webster:

"(L. s.)

"Date of marriage, April 2, 1879.

"Name of groom, Charles L. Tillinghast.

"Name of bride, Annah D. Rawson.

"Residence of each at time of marriage, Webster.

"Age of each: groom, 22; bride, 25.

"Occupation of groom, farmer.

"Place of birth: groom, Gloucester, R. I.

"   "   "   "      bride, Webster.

"Name of parents, David and Emma.

"   "   "   "      bride, Abel D. & Hannah.

"What marriage? 1st each.

"By whom married, Rev. J. M. Childs.

"This certifies that the above is a copy of the marriage record of the town of Webster, Mass.

"L. J. UPHAM, *Town Clerk.*

"WEBSTER, MASS., Dec. 6, 1899."

The defendant himself produced this copy, and put it in evidence as a part of his defence in the case. He testifies, however, that it is wholly untrue, that no marriage ceremony was performed by the minister named therein, that no such person

was present, and that it was fixed up between him and said justice so that it might appear that the child above referred to was born in lawful wedlock, the date of said certificate, as will be noticed, being sufficient on its face to have that effect. The defendant says that he paid the sum of five dollars to the magistrate for fixing up the bogus paper referred to.

It appears from the defendant's testimony that said Kibby was assistant town clerk of said town, as well as justice of the peace therein.

The complainant corroborates the testimony given by the defendant in so far as he denies that they were married by the minister whose name appears in the paper, above set out, purporting to be a marriage certificate. She says that she was married to the defendant by said Kibby, and by no other person; and that the only object intended to be accomplished by the bogus certificate, which was fixed up by her husband and said Kibby after the marriage actually took place, was to show that it occurred prior to the time when the first-born child of the parties was begotten. She also testifies that it was agreed between her and the defendant that the time of the marriage should be kept a secret.

In addition to the direct and positive testimony of the complainant that a ceremonial marriage was actually performed in manner aforesaid, evidence was introduced that for fifteen years or more thereafterwards the complainant and defendant lived together as husband and wife, and raised a family of four children, including the one first above referred to; that the defendant supported the family, recognized and treated the children as being his own; that he recognized and treated the complainant in every way as his lawful wife, writing letters to her in which he addressed her as his wife, and writing letters to the children in which he subscribed himself as "Papa." It is also in evidence, and not disputed, that he always held the complainant out as his wife in the community where he lived, and introduced her as such when taking her with him on visits, and on other occasions. In short, the uncontradicted evidence shows that, as far as could be determined by the conduct of the parties, they regarded themselves, and

were regarded by all others who knew them, as being husband and wife.

In addition to this uniform course of conduct it may be added that the defendant has repeatedly been prosecuted by the complainant for non-support since he deserted her, which was some seven or eight years ago, and that, according to his own admission, he did not in any of said prosecutions set up the defence which he now interposes.

The evidence above referred to as to the cohabitation of the parties, and their treatment of each other, subsequent to the time when the alleged marriage took place, was objected to by defendant's counsel at the trial, on the ground that, this being a criminal case, the only evidence admissible to prove a marriage is the record evidence thereof, or direct evidence of the fact that a marriage was performed, by witnesses who were present.

(1)   We are aware that the rule of evidence in regard to proof of marriage is different in criminal cases from what it is in civil. That is, that in the former class of cases evidence of cohabitation, of the conduct of the parties in holding out each other as husband and wife, having children, etc., is not enough of itself to satisfy the requirements of the law, but that there must be satisfactory proof (that is, proof beyond a reasonable doubt) of a ceremonial marriage.

We do not understand, however, that the law prohibits the introduction of evidence that the parties lived together and cohabited as man and wife, after the time of the alleged ceremonial marriage, by way of corroboration of the existence of such marriage. Nor do we see any good reason upon principle why such evidence should be excluded. It is the universal custom of people to live together and cohabit as husband and wife from the time of their marriage, and it is to be presumed that they will not thus consort unless they are married. In other words, such cohabitation naturally and legitimately follows marriage, and is a fact which certainly tends to prove that the parties not only regard themselves as being married, but that such is the actual fact. And hence, such circum-

stantial evidence tends to corroborate the positive evidence that there was a ceremonial marriage.

In *Hospital Trust Co.* v. *Thorndike*, 24 R. I. 105, Rogers, J., in delivering the opinion of this court, said: "There is no one absolutely necessary manner of proving a ceremonial marriage to the exclusion of all other methods. It may be proved by the testimony of persons present who saw the marriage, and the parties to an alleged marriage may be witnesses for or against it, unless rendered incompetent by some statute provision."

Judge Rogers then quotes from the opinion of the court in *Bissell* v. *Bissell*, 55 Barb. 325, as follows: "In cases affecting the legitimacy of issue, rights of succession to property, and many other cases, such a contract may be proved by circumstantial evidence, by admission of the parties, by their living together as man and wife, etc. But there is another class of cases, such as prosecution for bigamy, *crim. con.*, etc., in which there must be direct evidence of the actual marriage." He then says: "The record of the marriage and marriage certificates are also competent evidence of marriage, but the register of the marriage is not *the best evidence*, at least not in the sense that it must be produced if obtainable, for Dr. Lushington, in *Woods* v. *Woods*, 2 Curt. Ec. 516, 523, says that 'the course of practice in the courts of law consider that in order to establish a marriage the evidence of any one person at the marriage is sufficient without calling for the register at all.'"

In *Commonwealth* v. *Norcross*, 9 Mass. 493, the court said: "The recording of marriage was intended to perpetuate the evidence of the fact, after the witnesses present shall have died. But a copy of such record is not so satisfactory evidence as the testimony of witnesses. These last, indeed, are *necessary*, to prove the identity of the parties." See also *Murphy* v. *The State*, 50 Ga. 150. Am. & Eng. Ency. of Law, 2nd ed. vol. XIX, pp. 1197-8, and cases cited.

In *State* v. *Wilson*, 22 Iowa, 364, it was held that, in a prosecution for adultery, record evidence is not indispensable to prove the marriage, but that the fact may be established by

the testimony of either husband or wife, corroborated by proof of their long and continued cohabitation as such. See also *State* v. *Williams*, 20 Iowa, 98; *Langtry* v. *State*, 30 Ala. 536; Wharton's Crim. Law, 9th ed. § 1700, and cases cited in note; and *Miles* v. *United States*, 103 U. S. (13 Otto) 304.

The case of *Reg.* v. *Smith*, 14 Upper Canada, 565, cited by defendant's counsel, does not sustain the position taken by him —that evidence of the cohabitation, etc., by the parties is not admissible in corroboration of an alleged ceremonial marriage, in a criminal case,—but simply that such evidence alone is insufficient to prove a marriage. The language of the court is: "Mere evidence of cohabitation and reputation of being married will not do."

We fail to see that the case of *Odd Fellows Ben. Association* v. *Carpenter*, 17 R. I. 720, relied on by defendant's counsel, sustains the position taken by him.

We find no error in the rulings complained of.

Of course, it goes without saying that the conduct of the defendant and said justice of the peace, in fixing up the bogus marriage certificate and having the same recorded after the marriage took place, had no effect upon the validity of the marriage in question. And this is so, even though the complainant was knowing to, and acquiesced in, said fraudulent transaction, as was evidently the fact from the testimony in the case; for the only question is, were the parties joined in marriage by said justice of the peace, as set forth in the certificate given by him to that effect? If they were, whatever else took place, whether before or after the ceremony was performed, had no effect upon the validity thereof.

As to the ground taken by defendant that the verdict was against the evidence, we are of the opinion, upon a careful examination of the record presented, that this position is untenable. The direct and positive testimony of the complainant that a marriage ceremony took place, together with the certificate of said justice of the peace to that effect, taken in connection with the strong corroborative evidence above referred to, was sufficient to warrant the jury in finding that the parties were lawfully married. And we are not surprised that, in

view of the numerous contradictory statements made by the defendant in giving his testimony, his indirect and evasive answers, taken in connection with his course of conduct since the marriage, the jury should have failed, as they evidently did, to give any credence to his uncorroborated statements bearing upon the question of the ceremonial marriage.

The defendant's petition for a new trial is denied, and the case is remanded to the Common Pleas Division for further proceedings.