**UNITED STATES ex rel. PALERMO v. TOD, Commissioner of Immigration.**

(Circuit Court of Appeals, Second Circuit. Decided February 4, 1924.)

No. 206.

1. **Habeas corpus ⟂113(12)—No review as to weight of evidence.**

   On appeals from orders sustaining or dismissing writs of habeas corpus in immigration cases, the Circuit Court of Appeals does not review the weight of evidence, nor balance or resolve conflicting testimony.

2. **Evidence ⟂321—One may testify to date and place of birth.**

   One may testify to the date and place of birth, even though hearsay.

3. **Evidence ⟂351—Registers and certificates competent evidence of birth or baptism.**

   Registers and certificates, kept or issued by a clergyman or other proper officer, are competent evidence of the fact of birth or baptism, and baptismal registers or certificates are admissible to show the fact and date of baptism, and the fact that the child was born before the baptism.

4. **Aliens ⟂54—Certificate of baptism should receive consideration in immigration proceeding.**

   In a proceeding before immigration officers, a certificate of baptism should have received at least the same consideration which would have been given to it by a court in an action or suit.

5. **Habeas corpus ⟂85(1)—Discrepancies in certificate of baptism held trifling, and to be discarded as matter of law.**

   In habeas corpus proceeding to obtain release of one seeking to enter the country on the ground that he was born therein, discrepancies in a certificate of baptism *held* so trifling and self-explanatory that they must be discarded as matter of law.

6. **Aliens ⟂54—Board of special inquiry held not to have basis for determining applicant for admission was not born in the United States.**

   In habeas corpus proceeding to obtain release from Commissioner of Immigration, *held,* as a matter of law, that the board of special inquiry had no basis on which to determine that the relator was not born in the United States and there baptised at the date set forth in a certificate of baptism.

7. **Aliens ⟂54—Finding of perjury by applicant for admission held not supported.**

   On habeas corpus by one held in custody by the Commissioner of Immigration, *held,* that a finding of the board of special inquiry that relator was guilty of perjury was without support in the evidence, where he merely testified that his parents "must be in America."

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus proceeding by the United States, on the relation of Antonio Palermo, against Robert E. Tod, Commissioner of Immigration. From an order dismissing the writ, relator appeals. Reversed.

Appeal from an order of the District Court for the Southern District of New York dated June 23, 1923, dismissing a writ of habeas corpus and re-manding relator to the custody of the Commissioner of Immigration at the port of New York for deportation. On January 23, 1923, a hearing was had before a board of special inquiry at the port of New York. Relator testified (through an interpreter) that he was born in New Orleans, La., but had been residing in Palermo, Italy, for 20 years; that when he was 8 years old he went to Italy, accompanied by his parents, who had returned to America some 12 years before, and had left him in Italy in care of a friend of his father, who acted as his guardian. From the time relator had been left in Italy by his parents, he had not received any news from them. He produced a baptismal certificate in French, which translated read as follows:

---

⟂For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Extract from baptismal records of Register No. 28, l'Eglise Paracoial (Church) St. Louis: New Orleans, Louisiana. United States of America. In the year eighteen hundred and ninety-four, October 1st, Antonio Palermo was baptized, born on 9th 'day of June, 1894, legitimate son of Vincenzo Palermo and Vincentia Muscada—Godfather, Charles Settes formaggio. Godmother, Teresure Settesformaggio—Clergyman, J. M. Barone. Certified copy. New Orleans, 30th June, 1898. R. Mannier, per C. Y. M., Archionte."

The signature of "Rev. Mannier" was certified as genuine by a certificate dated July 1, 1898, signed by "Rev. Leonida." This was certified by Magenti, the Italian consul at New Orleans, and Magenti's signature in turn was certified by the order of the Minister Fiaccardi at Rome on January 3, 1912. Relator testified that this baptismal certificate had been left with his guardian, and that, if he had known that his guardian was in possession of this document, he would have come to the United States much sooner. Relator further testified that he was going to his cousin, Tomassa Bionda, 50 Second street, Strasburg, Pa.

Tomasso Palermo, of 50 Second street, Strasburg, Pa., was then called as a witness and testified through an interpreter. He stated that he was calling for his brother, the relator, and had been notified by his cousin, Bionda Tomassa, that the brother had arrived. Tomasso Palermo further testified that he had been in the United States since 1906, and at that time his brother Antonio was in Palermo; that he (Tomasso) had taken out his first papers in Strasburg; that he was married and had three children, the oldest of whom was 24 years old; that he was employed by the Lackawanna Railroad Company, at $4.50 a day, had $500 in the bank of Strasburg, Pa., and owned the house in which he lived. He further testified that his parents were in Palermo, Italy, but had been in New Orleans "30 years ago"; that he did not know when they left New Orleans, because he was in Italy and they were in Louisiana, and they had lost track of each other; that the difference in age between him and relator was accounted for by the fact that the relator was the youngest of the family. He then testified that he had two more brothers in Italy, and gave their names and ages. He further testified that his brother Antonio, the relator, was born in New Orleans, and that he remembered that the brother was about 8 or 9 years old when he (Tomassa) came to the United States in 1906. He also stated that his father's name was Vincenzo Palermo and his mother's maiden name Vincenza Mascara.

Relator, upon being recalled, gave the same testimony as to the names of his father and mother, and said, when asked who was the witness who appeared for him, that it was his brother Palermo Tomassa. He was then asked how long before his father and mother were in the United States, and he stated that they had returned to the United States some 12 years before, repeating in that respect what he had previously answered.

Upon this testimony, relator was excluded upon two grounds: (1) That the so-called Italian quota was full; and (2) as being a person guilty of "an offense involving moral turpitude, namely, perjury." Relator then obtained a writ of habeas corpus, and, when the matter came on for hearing, the District Judge directed that relator be re-examined by the immigration authorities on such additional evidence as he might obtain in respect of his birth in the United States.

In pursuance of this direction, a hearing was had on April 25, 1923. The attorney for relator telegraphed the rector of the St. Louis Cathedral at New Orleans, La., requesting information as to what the records of the church showed regarding date of baptism and date of birth of Antonio Palermo, because "record not satisfactory to immigrant authorities, as year of baptism not clear." In answer to this telegram, the rector of St. Louis Cathedral at New Orleans, telegraphed: "Register, twenty-eight, folio our twenty-two. Baptismal record of Antonio Palermo, son of Vincent Palermo, born June ninth, Eighteen ninety-four. Baptized October 1st, 1894."

A witness, Andrea Salerno, of 173 West Houston street, New York City, was produced, who testified that, with the exception of one absence of 3 months, he had lived continuously in the United States since 1890, and that from 1890 until 1896 he had lived in New Orleans, and knew Vincenzo Palermo, the father of Tomasso and Antonio; that he became acquainted with

him in 1894, and worked with him on a sugar plantation; that one child was born in 1894 in New Orleans, and that the child was a boy, and that he (Salerno) was in the house when the boy was born; that he knew the child was baptized and, if "I remember right," his name was Carmelo, but he was not sure of the name; that he did not know whether the boy's parents had ever returned to Italy, as he had left New Orleans, and that he was sure that Antonio was the boy born in New Orleans, because Antonio's brother had called at his house and told him, "My brother is here now."

It was noted in the record that the certificate of baptism was "indefinite," because one French word had been crossed out and two other words written in; but this was all made clear by the later information from the Cathedral in New Orleans.

At the end of this second hearing, the previous decision of the board was sustained, for the reasons given, and one of the board voted to affirm decision because the sole claim to nativity in the United States was "based upon a baptismal certificate, which is inaccurate and does not certify as to the place of birth by any of the signatories, and upon the testimony of one Salerno, whose testimony is not conclusive that this person was born in New Orleans."

The District Court on the record dismissed the writ.

Charles J. Gerlich, Jr., of New York City, for appellant.

William Hayward, U. S. Atty., of New York City (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for respondent.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] We, of course, do not review the weight of evidence, nor do we balance or resolve conflicting testimony on appeals from orders sustaining or dismissing writs of habeas corpus in immigration cases.

The relator was excluded on the ground (1) that he had not shown that he was native-born, and thus was barred by the then filled quota; and (2) on the ground that he had committed perjury.

[2, 3] 1. In actions or suits, it is fundamental that one may testify to the date and place of birth even though that is hearsay. Registers and certificates, kept or issued by a clergyman or other proper officer, are competent evidence of the fact of birth or baptism, as the case may be, and baptismal registers or certificates are admissible to show the fact and date of baptism and the fact that the child was born before the baptism. 17 Cyc. 405, and cases cited.

[4] In a proceeding of the character at bar, where strict rules of evidence are not applied, the certificate of baptism should have received at least the same consideration which would have been given to it by a court. The two hearings before the immigration authorities showed, first, that relator had the certificate in his possession; and, secondly, that the dates therein set forth were confirmed by the records of the Cathedral in New Orleans. The relator's age checked up accurately with the dates set forth in the baptismal certificate, and nowhere in this record was there any suggestion that the baptismal certificate in possession of relator, which according to his testimony he had brought with him from Italy, was other than genuine.

[5] There was full accord on the part of the witnesses as to the names of relator's parents, and discrepancies as to minor details were so trifling and so self-explanatory on the record that they must be discarded, as matter of law. Thus, when first examined on January 23d,

relator was asked through an interpreter, "Have you any brothers or sisters anywhere?" He answered, "No." His brother, however, was present and then testified, and, when the relator was recalled, he was asked who was the witness who appeared for him. His answer was that it was his brother Tomasso. It is perfectly plain that, if the interpreter translated correctly, relator must have misunderstood him, or may have supposed that the question was directed to ascertaining whether there was any other brother in Italy. There was a difference in the testimony between the two brothers as to whether there were any other brothers or sisters. Relator testified there were none, while Tomasso testified that he had two more brothers, one 34 years old and one 44 years old. It is apparent from this record that relator, who was taken to Italy when he was but 8 years old, and there abandoned, or, at least, left in the charge of a guardian, might well have had no knowledge of the existence of any other brothers. No effort was made to elicit the facts in such clear fashion as the circumstances called for.

[6] The case might have been quite different, in the absence of the baptismal certificate. We think that certificate, the genuine character of which remained unassailed, was so controlling that, as matter of law, the board upon this record had no basis on which to determine that the relator was not born in New Orleans and there baptized at the date set forth in the certificate. In addition, the testimony of Salerno is definite as to the place and date of birth of relator, and there is nothing in this record to contradict this testimony. It is claimed that Salerno testified that relator's name was Carmelo; but he merely stated, if "I remember right," it was Carmelo, and then that he was not sure of the first name.

[7] 2. We have great difficulty in understanding how the board found that relator was guilty of perjury. The board failed to specify in what respect he was thus guilty, and we must assume that this finding was based upon the proposition that, because one brother said that there were two older brothers, and relator, as we have indicated, had no knowledge on the subject, and therefore said he had no other brother, therefore the board, without any other evidence, made this serious finding against relator. Relator, who made clear that he had not seen or heard of his parents for many years, and whose parents left him to go to America, stated, "They must be in America, but I have not received news for a long while." The brother testified that the parents were in New Orleans 30 years before and that they were now in Palermo, Italy. But a reading of the testimony of each brother shows plainly that these were merely conclusions from the last knowledge or information each had as to the whereabouts of the parents many years before. When relator was recalled, he was told that his brother had testified that his parents were in Italy, and he had testified that his parents were in the United States.

As matter of fact, he had not so testified. He had merely stated, "They must be in America," and then, when he was thus interrogated by the immigration official, he stated he was positive that his mother and father were in America, when it was perfectly plain that his answer was in respect of an argumentative question, and represented a perfect-

ly natural conclusion from such information as he had had many years before.

Passing by all the necessary elements of the crime of perjury here absent, there was not the slightest ground upon which to make so grave a finding, and we so state, in order that, hereafter, this relator may not be embarrassed by a notation of that character in the records of the immigration authorities.

The order below is reversed.