**BROWNLOW, U. S. Immigration Inspector, v. MIERS.**

Circuit Court of Appeals, Fifth Circuit. November 5, 1928.

No. 5221.

Alexander C. Birch, U. S. Atty., of Mobile, Ala. (D. R. Coley, Jr., and J. E. Meredith, Asst. U. S. Attys., both of Mobile, Ala., of counsel and on the brief), for appellant.

William H. Armbrecht, of Mobile, Ala. (Chas. C. Hand and Thos. E. Twitty, both of Mobile, Ala., of counsel and on the briefs), for appellee.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. George Miers, a minor 17 years of age, arrived at the port of Mobile, Ala., on the steamship Texas, January 23, 1927, from Naples, Italy, as a stowaway, and after hearing before a Board of Inquiry of the United States immigration inspectors, was excluded and ordered deported to the country from which he came. At the hearing before the board he was asked the following question, and gave the following answer:

"Q. At the time you arrived at Mobile, Ala., and were brought to the immigration office, you were manifested. I will now read you this manifest, and ask you if it is correct: 'S. S. Texas. Passengers sailing from Genoa, Italy, December 31, 1926. Family name, Miers; given name, George; age 17; sex, male; single; occupation, seaman; can read and write English; nationality, Italy; race, Italian; last permanent residence, Naples, Italy; no relatives in country whence came; destination, Mobile, Ala.; stowaway; no money; two years in New York; going to join no one; to remain permanently in the United States; never in jail; neither polygamist or anarchist; condition of health good; 5 feet 1 inch; complexion, dark; hair, black; eyes, brown; tattoo "G. M.," left wrist; born Naples, Italy.'

"A. The manifest is correct, except as to my race, nationality, and place of birth, which I do not know."

He was able both to speak and write English, and stated that he did not wish to have any friend or relative present at the hearing; that he had no passport or credentials of any kind; that both parents had died in Italy some two or three years before and that he did not know the names of either; that he had two sisters and a brother living in New York City, the name of one sister being Mary Miers, who married in Italy and "went somewhere; I never see her any more"; that his brother's name was A. Miers, but he did not know his first name. In answer to the question, "Of what country are you a subject or citizen?" He answered, "Nowhere;" but claimed to be a citizen of the United States, because he thought he was born in New York, although he had no proof thereof. At the hearing there was

read into the record a letter from an attorney at law, stating that he represented Miers and requesting that he be permitted to appear for the alleged alien as attorney, which, after reading, the board ruled upon as follows:

"The request of the attorney of record is denied so far as being present before the conclusion of the hearing. This is in accordance with rule 11, subdivision B., viz: 'Hearings before the boards "shall be separate and apart from the public;" but the alien may have one friend or relative present after the preliminary part of the hearing has been completed: Provided, first, that such friend or relative is not and will not be employed by him as counsel or attorney. * * *'

"Mr. Armbrecht will be accorded the right to review the record by the Inspector in Charge at Mobile, Ala."

The attorney was allowed to review the record and an appeal was prosecuted to the Secretary of Labor, who affirmed the decision of the board. There is nothing in the record to show that a rehearing was sought before the board, or that anything in the way of evidence that might have been excluded or was newly discovered, was urged by counsel who took the appeal, at any stage before the final ruling of the Secretary of Labor. It was stated in oral argument by counsel for the appellant that the matter had been heard previously, both by the board and Secretary of Labor, and upon application to the court below the departmental order of deportation was set aside, and the cause sent back for another hearing, upon the holding of the lower judge that the first proceeding was unfair, because of the denial of the right to representation by an attorney. The case before us was not orally argued by counsel for appellee. The only thing in the record tending to show that the matter had previously been before the lower court is the following in the printed copy of proceedings of the board, as follows:

"Chairman: The United States District Court, sitting at Mobile, Ala., May 16, 1927, having remanded to the custody of the immigration authorities the alien George Miers, a de novo hearing as to the application of the alien to land in the United States will now be heard."

It was also stated by counsel for appellant that the board again declined to allow the attorney to represent the petitioner, for the reason it would have been an acquiescence in the ruling without opportunity to get the question, which it considered of vital importance to the department, before this court for decision.

Thereupon the minor, through his next friend, Gene D. Barr, brought this application for habeas corpus for the release of Miers, upon the ground that the hearing was unfair, because he had been denied the right to have a friend present throughout the proceedings before the board; further, because he had been denied the aid of an attorney or counsel; that although the board "well knew of evidence in favor of petitioner, or evidence which might throw light on the status of your petitioner as being entitled to remain in this country, said immigration inspectors wholly failed to call said witnesses and to bring out said testimony"; that petitioner was guaranteed the right to counsel by the Constitution and laws of the United States and was denied due process under the Fourteenth Amendment; and, finally, that the decision of the board was not supported "by any evidence that, or to the effect that, your petitioner was and is an alien of the United States, and was and is entitled to remain in the United States, all as shown by Exhibit A hereto attached, which your petitioner avers contains all of the evidence brought out at said hearing of said board." Exhibit A was a certified copy of the entire proceedings before the board, which showed the examination of Miers, from which the facts stated above are taken.

The inspector of immigration and the sheriff of Mobile county, who were made parties defendant, demurred to the petition, upon the ground, in substance, that it did not disclose upon its face a cause of action, and moved to strike the whole thereof from the record. Among the reasons urged for dismissal were that the court was without jurisdiction; that it affirmatively appeared from the petition that petitioner was held pursuant to a valid order of deportation; that the hearing was fair and upon substantial evidence, which had been affirmed by the Secretary of Labor; that petitioner expressly waived the right to have a friend or acquaintance present during the hearing; that the contention that petitioner was entitled to representation by an attorney was contrary to the rules of the department and the laws of the United States, and did not render the hearing unfair or unjust; because the averments that the board "knew of evidence in favor of petitioners, or which might throw light on petitioner's right to remain in this country, and had failed and neglect-

ed to call said witnesses and bring out such testimony, is a naked conclusion of the pleader"; that because neither the names of the witnesses nor the character of the evidence alleged to have been known by the immigration inspectors is set forth, and it affirmatively appears from the exhibits attached to said petition that such information was not known to the board; that the alleged violation of the constitutional rights of petitioner are mere conclusions of law; that there was no abuse of discretion by the board; and that the exhibits attached to and made part of the petition affirmatively show that petitioner was and is an alien.

The matter appears to have been submitted upon this state of the record without further pleading or proof in support of the allegations of the petition. The court below held the hearing unfair, in that petitioner was denied the right to have the assistance of counsel, and it was further indicated that the court thought certain evidence had been considered which did not appear in the record. It decreed "that the hearing held by the said Board of Special Inquiry, on May 19, 1927, be and the same is hereby declared null and void, and set aside, and that the said George Miers be held in the custody of the immigration authorities pending a hearing by a Board of Special Inquiry, in accordance with the immigration laws of the United States."

## Opinion.

In reviewing the record in this case it is well to note that we have as good an opportunity of judging the proceedings before the board as had the court below, for both are upon the cold transcript and without the advantage of having heard any of it. We, therefore, cannot agree with the language quoted in the court's written opinion, that evidence other than that which was actually recorded by the board was heard and considered. The portion of the report quoted by the court below was, in our opinion, merely a brief summary of some of the facts brought out by the examination of Miers, the only witness, and did not purport to cover all of it. The paragraph in question is as follows:

"Inspector Ware: The alien before the board arrived as a stowaway on the S. S. Texas, from Naples, Italy, January 23, 1927. He states that he does not know of what country he is a native, but thinks that he was born in New York, and therefore an American citizen. The alien is unable to produce any supporting evidence of his claimed nativity—documentary or personal. He sets forth in his testimony that when four years old he went from New York to Naples, Italy, but does not recall any incident of the trip, having been told of this voyage by his father and mother afterwards. Alien further testifies that neither his father or mother nor any one else ever told him that he was born in the United States. In view of this and other evidence adduced at the hearing, it is my opinion that George Miers is an alien; and I therefore move to exclude him as a stowaway, a person likely to become a public charge, and as coming in violation of the Immigration Act of 1924, being an alien without a proper immigration visa."

We think it fairly evident that the inspector was not referring to evidence other than that which preceded, but simply to other evidence brought out in the examination of Miers and appearing in the steamship's manifest, which the latter admitted to be correct, except as to his race, nationality, and place of birth, which he stated he did not know. In any event, if there had been any such omitted evidence, it would have been a very easy matter for his counsel, who was allowed to inspect the record and to be heard before the Secretary of Labor, to have discovered and developed such facts, at least to the point of alleging them specifically in the petition for the writ herein, rather than to make the general allegation quoted above in this opinion. This is all the more significant, if, as was asserted by counsel for the government and in some measure supported by the opening paragraph of the proceedings before the board, there had been a previous hearing by it. If such evidence existed and had been excluded, counsel, although denied the right to appear for his client, could have furnished the latter with the information, named the witnesses, etc., and had his friend or acquaintance, whom he was tendered the right to have present, ask the board to summons and examine them at the second hearing. Nothing appears to have been done in this direction, and the petition for the writ does not pretend to inform the court of the nature of such evidence.

The court below, in effect, ruled that the showing before the board was at least sufficient to warrant the holding of petitioner and remanded him to custody, with directions to permit his counsel to appear. Hence the issue of sufficient proof of alienage is not before us, as the decision was in favor

of the appellant and appellee has not prosecuted a cross-appeal. However, the judgment below annuls the final order of the Secretary of Labor, excluding petitioner and directing that he be deported, and in our opinion brings before us for determination the sole question as to whether the court below was correct in holding that the hearing was unfair because of the denial of the asserted right to be heard before the board through an attorney.

Congress, of course, has full and plenary power in dealing with the admission of aliens into this country, and might, if it saw fit, exclude them entirely. In the Act of February 5, 1917 (39 Stat. 874), it dealt at length with the matter and we think, recognizing the difficulties with which the immigration officers would be confronted, provided and intended to authorize different methods and procedure for handling cases, where the applicants were attempting to enter, from those of persons who had already entered and were sought to be deported, regardless of the manner of their getting into the country. In the first place, the law deals with two classes of aliens in separate sections. As to those seeking admission, it provides for expeditions and summary hearings, to the end that the thousands of immigrants coming before the department each year may be speedily disposed of, with the idea, not only of permitting the machinery to function, but in the interest of the persons themselves, who must be held or put under heavy bail until their cases are decided, as well as of the vessels, who have to bear the expenses of returning aliens to their ports of departure, if excluded.

In the concluding portion of section 16 of the act of 1917 (8 USCA § 152) it is provided:

"Every alien who may not appear to the examining immigrant inspector at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for examination in relation thereto by a board of special inquiry. In the event of rejection by the board of special inquiry, in all cases where an appeal to the Secretary of Labor is permitted by this act, the alien shall be so informed *and shall have the right to be represented by counsel or other adviser on such appeal.* The decision of an immigrant inspector, if favorable to the admission of any alien, shall be subject to challenge by any other immigrant inspector, and such challenge shall operate to take the alien whose right to land is so challenged before

a board of special inquiry for its investigation."

The procedure for handling cases of persons arriving and seeking admission is found in section 17 (8 USCA § 153), as follows:

"That boards of special inquiry shall be appointed by the commissioner of immigration or inspector in charge at the various ports of arrival as may be necessary for the prompt determination of all cases of immigrants detained at such ports under the provisions of the law. Each board shall consist of three members, who shall be selected from such of the immigrant officials in the service as the Commissioner General of Immigration, with the approval of the Secretary of Labor, shall from time to time designate as qualified to serve on such boards. When in the opinion of the Secretary of Labor the maintenance of a permanent board of special inquiry for service at any sea or land border port is not warranted, regularly constituted boards may be detailed from other stations for temporary service at such port, or, if that be impracticable, the Secretary of Labor shall authorize the creation of boards of special inquiry by the immigration officials in charge at such ports, and shall determine what government officials or other persons shall be eligible for service on such boards. Such boards shall have authority to determine whether an alien who has been duly held shall be allowed to land or shall be deported. All hearings before such boards shall be separate and apart from the public, but the immigrant may have one friend or relative present under such regulations as may be prescribed by the Secretary of Labor. Such boards shall keep a complete permanent record of their proceedings and of all such testimony as may be produced before them; and the decisions of any two members of the board shall prevail, but either the alien or any dissenting member of the said board may appeal through the commissioner of immigration at the port of arrival and the Commissioner General of Immigration to the Secretary of Labor, and the taking of such appeal shall operate to stay any action in regard to the final disposal of any alien whose case is so appealed until the receipt by the commissioner of immigration at the port of arrival of such decision which shall be rendered solely upon the evidence adduced before the board of special inquiry. In every case where an alien is excluded from admission into the United States, under any law or treaty now existing or hereafter made, the decision of a

board of special inquiry adverse to the admission of such alien shall be final, unless reversed on appeal to the Secretary of Labor. * * *"

Section 23 (8 USCA §§ 102, 108) defines the power of the Commissioner General of Immigration, as follows:

"That the Commissioner General of Immigration shall perform all his duties under the direction of the Secretary of Labor. Under such direction he shall have charge of the administration of all laws relating to the immigration of aliens into the United States, and shall have the control, direction, and supervision of all officers, clerks, and employees appointed thereunder; he shall establish such rules and regulations, prescribe such forms of bond, reports, entries, and other papers, and shall issue from time to time such instructions not inconsistent with law, as he shall deem best calculated for carrying out the provisions of this Act and for protecting the United States and aliens migrating thereto from fraud and loss. * * * The duties of commissioners of immigration and other immigration officials in charge of districts, ports, or stations shall be of an administrative character, to be prescribed in detail by regulations prepared under the direction or with the approval of the Secretary of Labor."

Section 19 (8 USCA § 155) applies to those who have already entered, but are sought to be deported. It reads:

"That at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; any alien who shall have entered or who shall be found in the United States in violation of this Act, or in violation of any other law of the United States; * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported. * * * In every case where any person is ordered deported from the United States under the provisions of this act, or of any law or treaty, the decision of the Secretary of Labor shall be final."

It will be noted that there is no attempt to provide in detail for the method of hearing the class of cases arising under the last quoted section of the act. On the other hand, in those above quoted with respect to persons seeking admission, as before stated, Congress goes into very great detail and provides for prompt action. In doing so, it has itself indicated the instance in which the applicant shall have right to counsel; i. e., before the Secretary of Labor. See section 16 above cited. However, notwithstanding the minute detail of section 17 for a summary hearing, it not only does not give the right to counsel, but we think, in the light of the specific provision in section 16, coupled with the permission to "have one friend or relative present," reasonably excludes the idea that counsel should be permitted. The department has so construed it for years and accordingly has prescribed rules to govern at such hearings distinct from those on appeal to the Secretary of Labor, and in ordinary deportation cases. As to cases covered by section 17, the Commissioner General has, by rule 11, provided as follows:

"Paragraph 1. Boards of special inquiry shall determine all cases as promptly as in the estimation of the immigration officers in charge the circumstances permit, due regard being had to the necessity of giving the alien a fair hearing. Hearings before the boards 'shall be separate and apart from the public'; but the alien may have one friend or relative present after the preliminary part of the hearing has been completed: Provided, first, that such friend or relative is not and will not be employed by him as counsel or attorney; second, that if a witness, he has already completed the giving of his testimony; third, that he is not an agent or a representative at an immigration station of an immigrant aid or other similar society or organization; and fourth, that he is either actually related to or an acquaintance of the alien."

Inasmuch as section 19 attempts no such detail in proceedings to deport those who are already in the country, the board has adopted rule 18, from which we quote paragraph 2 of subdivision D:

"At the hearing under the warrant of arrest the alien shall be allowed to inspect the warrant of arrest and shall be apprised that he may be presented by counsel. The alien shall be required then and there to state whether he desired counsel or waives the same, and his reply shall be entered on the record. If counsel be selected, he shall be permitted to be present during the conduct of the hearing and to offer evidence to meet any evidence presented or adduced by the government. * * *"

■ In view of the specific provision for counsel on appeal in section 16 of the act, we think the issue might be disposed of under the maxim "Expressio unius est exclusio alterius." However, we pitch our conclusion upon the proposition that the hearing was not unfair because of the denial of

counsel. One "knocking at the door" does not enjoy the protection of the provision of the Fourteenth Amendment with regard to counsel, which in the first place applies only to a criminal case. The courts in such cases merely have jurisdiction to inquire and determine whether the proceedings before the administrative department of the government have been fair and not denied to the applicant any of the rights and privileges dictated by common justice. U. S. ex rel. Buccino et al. v. Williams, Commissioner of Immigration (C. C.) 190 F. 897; Quon Quon Poy v. Johnson, Commissioner, 273 U. S. 352, 47 S. Ct. 346, 71 L. Ed. 680.

For the reasons assigned the judgment appealed from is reversed.