UNITED STATES ex rel. MEDEIROS v. WATKINS, District Director, Immigration and Naturalization Service.

No. 112, Docket 20795.

Circuit Court of Appeals, Second Circuit.

March 9, 1948.

FRANK, Circuit Judge, dissenting.

L. Ray Glass, of New York City (Vincent J. Cuti, of New York City, on the brief), for relator-appellant.

John F. Ryan, Asst. U. S. Atty., of New York City (John F. X. McGohey, U. S. Atty., and Robert Vielhaber, Atty., U. S. Dept. of Justice, Immigration and Naturalization Service, both of New York City, on the brief), for respondents-appellees.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

On February 21, 1945, the relator, listed as a repatriate, arrived at New York aboard the S. S. Gripsholm. There was doubt as to his claim of United States citizenship, and accordingly he was detained by the immigration authorities. On June 22, 1945, after several hearings before an Immigration Board of Special Inquiry, he was ordered excluded. This order was affirmed by the Board of Immigration Appeals, July 16, 1945. The exclusion order is based on the Board's finding that relator is an alien, a native and citizen of Bermuda, and that he is inadmissible upon the follow-

ing grounds: (1) He is not in possession of our immigration visa, as required by § 13(a) (1) of the Immigration Act of May 26, 1924, 8 U.S.C.A. § 213(a) (1); (2) he does not present any passport, or any document in lieu thereof, as required by the Passport Act, approved May 22, 1918, as amended, 22 U.S.C.A. § 223 et seq., and Exec. Order 8766, June 3, 1941; (3) he has not received permission from the Attorney General to reapply for admission after deportation under § 1(d) of the Act of March 4, 1929, 8 U.S.C.A. § 136(j); and (4) he has been convicted of a felony and is therefore excluded under § 3 of the Act of February 6, 1917, 8 U.S.C.A. § 136(e). Relator sought a writ of habeas corpus on the ground that he could establish citizenship through birth in San Francisco on March 16, 1902, but the district court dismissed the writ and this appeal followed.

At the original hearing before the district court, the respondent immigration officers introduced as an exhibit the record of the Immigration and Naturalization Service of the exclusion proceedings had as to relator. From this the following facts appear. As disclosed by his fingerprint record, relator had been committed to the New York County Penitentiary in 1921 for "unlawful entry." At the time of commitment he gave his name as Harry Brown, and his birthplace as Bermuda. Later that year he was transferred to the State Farm in Hampton, New York, from which he escaped in 1922. On recapture he was committed to the Westchester Penitentiary and there gave his name as Henry C. Brown, and his place of birth as Bermuda. He was released in 1923. On November 22, 1928, he was convicted in the Circuit Court of Fairfax County, Virginia, of felonious robbery and sentenced to twenty years in the Virginia State Penitentiary.

While in prison he was questioned by immigration officers, and on December 8, 1929, a warrant of arrest in deportation proceedings was issued. The warrant stated the date of his last entry as being August 15, 1924. A hearing was held on March 6, 1930, at which time he claimed to have been born in Portugal. He also stated that he had a maternal aunt, Mary Hall, who resided in Bermuda, and that he last entered the United States in 1926 under the name of Henry Brown.

In November, 1939, he was released from the Virginia prison, and it was then discovered that he had not been born in Portugal. A further investigation was made, and a number of letters were obtained from among his effects. This showed correspondence between him and a Mrs. Mary E. Hall of Bermuda, wherein she addressed him as her son, a relationship corroborated by letters between relator and Mrs. Louise Lathan, sister of Mrs. Hall. A consular investigation in Bermuda convinced the authorities that relator was born in Hamilton Parish, Bermuda, on November 20, 1899, the illegitimate son of Mrs. Hall, then known as Martha Hodgson, his father being one Jose Medeiros, a Portuguese and former resident of Bermuda. The evidence was adequate to support this view, and the facts that Mrs. Lathan repudiated previous statements and Mrs. Hall denied that relator was her son were not sufficiently persuasive to compel a contrary conclusion.[1]

As a result of such new information a warrant of deportation was issued on October 6, 1939, directing that relator be deported to Bermuda. This warrant set forth the date of entry as June 15, 1926. After his release from the penitentiary he was taken into custody by the immigration authorities. On May 16, 1940, Medeiros signed an agreement with the authorities at Nor-

[1] Before Mrs. Hall was interviewed in the consular investigation, relator had written her urging her to refuse to identify him or to give information. Her claim was that she had a son Henry who had gone to sea in 1922 and died in Boston in 1927. At the hearing below relator presented a Boston death certificate of November 10, 1927, of one Henry Brown born in Bermuda—stating the decedent's mother to be Mary Hodgson— and urged that the immigration officials thus had not sustained the burden of proof which he claimed to rest upon them upon denial of citizenship. It appeared that Mrs. Hall bore three illegitimate sons to Medeiros, the father, one of whom was located and one of whom went by the name of Henry Brown. There was no definite proof as to the third.

folk, Virginia, agreeing to leave the United States and to notify the Service of the vessel and date of its sailing, so that his departure could be verified, and stating further that "I * * * will not return to the United States without first receiving the permission prescribed by the law and rules." Within a month after executing this agreement, he departed from this country on a British ship and did not return until brought here on the Gripsholm.

The district court, in dismissing the writ, held that his status as a citizen had been decided by a body authorized to make the decision. It further held that his present claim of citizenship was "clearly frivolous in view of his acquiescence in his deportation in 1940, his failure to produce any proof of when or where born, and his varying statements upon the subject." A rehearing was granted, in the course of which relator appeared in person and was examined at great length. Thereafter the court again denied the writ, stating that "it does not appear to me that there is any substantial difference in the facts now elicited than were before me when I rendered my opinion on August 27, 1945."

 The relator contends that the question of citizenship is not an issue of fact to be decided by an administrative agency, but rather a matter for judicial determination. He seeks support for his position in Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082, and United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221. The language in the cases cited is directed to the jurisdictional requirements in a deportation proceeding. Each affirms that for deportation, alienage is a jurisdictional fact. Here the matter in issue is not one of deportation; rather it is an exclusion proceeding. The relator has not cited any case where the question of alienage was held to be one for judicial determination in an exclusion proceeding. Our own search of the authorities has failed to disclose holdings consistent with the position he advances. In fact, there is unanimity in the cases that a claim of American citizenship advanced by one applying for admission does not entitle him to a judicial trial of the validity of his claim. Such a person has only the right to a fair hearing by the administrative agency entrusted with the enforcement of the immigration laws. United States v. Ju Toy, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040; Chin Yow v. United States, 208 U.S. 8, 13, 28 S.Ct. 201, 52 L.Ed. 369; Moyer v. Peabody, 212 U.S. 78, 84, 29 S.Ct. 235, 53 L.Ed. 410; Tang Tun v. Edsell, 223 U.S. 673, 37 S.Ct. 359, 56 L.Ed. 606; Kwock Jan Fat v. White, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010; Ng Fung Ho v. White, 259 U.S. 276, 282, 42 S.Ct. 492, 66 L.Ed. 938; Quon Quon Poy v. Johnson, 273 U.S. 352, 47 S.Ct. 346, 71 L.Ed. 680; United States ex rel. Mark Guey Him v. Reimer, 2 Cir., 115 F.2d 241; Flynn ex rel. Dea Ton v. Ward, 1 Cir., 82 F.2d 223; United States ex rel. Chung Yuen Poy v. Corsi, 2 Cir., 62 F.2d 777; United States ex rel. Fong On v. Day, 2 Cir., 54 F.2d 990; Tsutako Murakami v. Burnett, 9 Cir., 63 F.2d 641; Wong Wing Sing v. Nagle, 9 Cir., 299 F. 601. See 3 C.J.S., Aliens, § 99a; Van Vleck, Administrative Control of Aliens, 1932, 189; United States ex rel. Lapides v. Watkins, 2 Cir., 165 F.2d 1017. At this date it cannot be challenged that the administrative determination on the question of citizenship in an exclusion proceeding is conclusive so long as a fair hearing was had and there has been no application of an erroneous rule of law.

 There are certain recurring situations in which the claim of citizenship is made: (1) where one claims to have been born abroad of parents who were citizens; (2) where one has claimed citizenship by virtue of marriage to a citizen; (3) where one claims citizenship by birth. The courts, in disposing of claims for citizenship by those seeking admission who assert their claims in terms of the above-described categories, have invariably held that the administrative determination—if fair hearing had been allowed—was final. As examples of the many precedents, the following may be cited: (1) as to the claim of citizenship, notwithstanding birth abroad, by reason of the citizenship of the parents, Quon Quon Poy v. Johnson, supra; United States ex rel. Mark Guey Him v. Reimer, supra; Flynn ex rel. Dea Ton v. Ward, supra;

United States ex rel. Chung Yuen Poy v. Corsi, supra; United States ex rel. Fong On v. Day, supra; Ex parte Ver Pault, 2 Cir., 86 F.2d 113; O'Connell ex rel. Kwong Han Foo v. Ward, 1 Cir., 126 F.2d 615; Dong Ah Lon v. Proctor, 9 Cir., 110 F.2d 808; (2) as to the claim of citizenship by virtue of marriage to a citizen, Ngai Kwan Ying v. Nagle, 9 Cir., 62 F.2d 166; (3) as to the claim of citizenship by birth, United States v. Ju Toy, supra; Chin Yow v. United States, supra; Tang Tun v. Edsell, supra; Kwock Jan Fat v. White, supra; United States ex rel. Scimeca v. Husband, 2 Cir., 6 F.2d 957; United States ex rel. Palermo v. Tod, 2 Cir., 296 F. 345; Brownlow v. Miers, 5 Cir., 28 F.2d 653; Wong Wing Sing v. Nagle, supra; Tsutako Murkami v. Burnett, supra; Ng Heu Yim v. Bonham, 9 Cir., 79 F.2d 655; United States v. Wong Gong, 9 Cir., 70 F.2d 107; United States ex rel. Di Giorlando v. Curren, D.C.S.D.N.Y., 2 F.2d 179; Ex parte Fong Chow Oi, D.C.N.D.Cal., 15 F.2d 209.

In view of this weight of authority no distinction is possible between those exclusion cases where the claim of citizenship is supported by some evidence of residence in the past and those where such element is lacking. Indeed, it would be a distinction without substance. As we have seen, a claim of citizenship by birth does not entitle the claimant to a judicial determination of his claim. In all such claims there is necessarily a subsidiary claim of residency or presence in the country, at least at the time of birth. Nor does it seem reasonable that the element of residency should add anything to the claimant's right to a court trial. At most, past residency can be no more than some slight substantiation of the claim of citizenship. Yet, as the above-cited cases indicate, evidence more substantial than past residency has been offered to support a claim and the courts have denied judicial determination of it. Moreover, the practical reasons justifying strict proof in the case of deportation, which necessarily severs one from his home and present connections, are non-operative, or at least much less compelling, in the case of exclusion of nonresidents.

■ The force of these precedents cannot be dissipated by attempting to distinguish between cases involving races rigorously excluded, such as the Chinese, and those involving other aliens. Thus the following cases considered the claim of citizenship advanced by Europeans. Ex parte Ver Pault, supra; United States ex rel. Scimeca v. Husband, supra; United States ex rel. Palermo v. Tod, supra; Brownlow v. Miers, supra; United States ex rel. Di Giorlando v. Curren, supra. Accordingly we hold that the relator was not entitled to a judicial determination of his claim for citizenship. Hence we do not need to consider the question as to how extensive a retrial of "jurisdictional facts," so called, must be accorded by a district judge upon a habeas corpus assailing deportation and the further question whether the hearing actually accorded relator satisfied such requirements.

■ The relator's claim that he was denied a proper hearing is unpersuasive. It largely turns on a difference in interpretation of the evidence on which the Board acted in ordering his exclusion. The record shows he was given a fair hearing. The mere fact that the results strike him as erroneous lends no support to his contention that the hearing was improper.

The orders dismissing the writ are affirmed.

FRANK, Circuit Judge (dissenting).

Were my colleagues' decision correct, the following rule would now prevail: If a citizen leaves this country and if, upon his return, the immigration officials give him a hearing after which they decide as a fact that he is not a citizen, that decision is final, provided only there was conflicting evidence before those officials as to his citizenship, and the hearing was fair. I cannot agree. I therefore think that the district judge erred in holding that relator here was not entitled to a judicial trial de novo of his claim to citizenship.[1]

---

[1] It is clear that the District Court (although relator appeared before it during the argument on rehearing on the dismissal of the writ) did not give relator a trial de novo on the issue of his citizenship, but merely affirmed the findings of the Immigration Board. The court said, in its first opinion: "his sta-

Where the immigration authorities seek to deport an individual, and that individual claims to be a citizen by birth and supports his claim with substantial evidence, he is entitled to a judicial rather than an administrative determination of the jurisdictional fact of his citizenship.[2] My colleagues hold that, where the immigration authorities are acting in exclusion rather than deportation proceedings with respect to such a person, despite the fact that for many years he resided in the United States, he is not entitled to such judicial administration. I think that sound reasons compel a contrary conclusion, and that we are not bound by controlling decisions to come to that startling conclusion.

Clearly, a citizen of the United States cannot be either excluded or deported. Clearly, too, the Immigration and Naturalization Service has no jurisdiction either to exclude or deport any person unless in fact he is an alien. The determination of this jurisdictional fact of alienage must be made in the first instance, of course, by the Immigration Service, which exercises the jurisdiction in either type of proceeding. But the question whether that determination is reviewable de novo by the courts should, in reason, depend not on the category of "exclusion" or "deportation" in which circumstances place the alleged alien, but on the substantial nature of the evidence which he advances to support his claim of citizenship. Absent conflicting testimony, his own assertion of birth within the United States, plus a plainly established period of residence within the United States, would be evidence sufficient to support a finding of citizenship by either the

Immigration Service or a court.[3] I think, therefore, that when such a person makes a claim of citizenship supported by such evidence, he should be entitled to a writ of habeas corpus, and a trial de novo of his claim, whether it be made in support of an assertion of a right to re-enter or in defense against a deportation. *If, on the other hand, the courts are to follow the distinction made by my colleagues, a person born in the United States, who had lived here continuously, would, by the mere circumstance of taking a voluntary business trip outside this country, deprive himself of a judicial determination of his right to return to this country.* I am disturbed, indeed, shocked by that conclusion.

Support for my position can, I believe, be found in the Supreme Court cases dealing with the problem of review of administrative findings in exclusion and deportation cases. True, in the early leading case of United States v. Ju Toy, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040, an exclusion case, a person of Chinese parentage who showed long residence in the United States and claimed birth here was held not entitled to a writ of habeas corpus where there was no showing of an unfair hearing by the Immigration Board; a fair hearing, though administrative, was considered due process of law. But that case made no distinction between deportation and exclusion proceedings, and I think its force has been considerably weakened by later holdings.

The weakening began with Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 494, 66 L.Ed. 938. There the Court considered the question of deportation of four Chinese who had lawfully entered the United States.

tus as a citizen was decided on facts, to some extent now in dispute, by a body authorized to make the decision, and which I have no power to review on the merits." In the second opinion, the court said: "The general rule is that where jurisdiction exists, a finding of fact by a Board of Special Inquiry is conclusive, and this court cannot interfere unless there was a denial of a fair hearing, the finding was without support in evidence, or an erroneous rule of law was applied. This court cannot consider the weight of evidence adduced before such a Board. * * * The record shows that there was a fair hearing, relator was given the privilege of having counsel or friend present, and stated that he did not care to have such, the finding is not without support in the evidence, and I cannot see that an erroneous rule of law was applied."

2 Ng Fung Ho v. White, 259 U.S. 276, 282, 42 S.Ct. 492, 66 L.Ed. 938; United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 152, 44 S.Ct. 54, 68 L.Ed. 221; Kessler v. Strecker, 307 U.S. 22, 34, 59 S.Ct. 694, 83 L.Ed. 1082; Espino v. Wixon, 9 Cir., 136 F.2d 96; Chin Hoy v. United States, 6 Cir., 293 F. 750.

3 Espino v. Wixon, 9 Cir., 136 F.2d 96; United States v. Wong Gong, 9 Cir., 70 F.2d 107.

Two claimed citizenship by birth, and the other two did not. As to the latter, the Court held that they were entitled to no judicial hearing. As to the former, the Court said that a constitutional question was raised: "If at the time of the arrest they had been in legal contemplation without the borders of the United States, seeking entry, the mere fact that they claimed to be citizens would not have entitled them under the Constitution to a judicial hearing. United States v. Ju Toy, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040; Tang Tun v. Edsell, 223 U.S. 673, 32 S.Ct. 359, 56 L.Ed. 606. But they were not in the position of persons stopped at the border when seeking to enter this country." Neither had they merely asserted a claim of citizenship; they had "supported the claim by evidence sufficient, if believed, to entitle them to a finding of citizenship." The Court held them entitled to a judicial determination of their claims. "Jurisdiction in the executive to order deportation exists only if the person arrested is an alien. * * * If the jurisdiction of the Department of Labor may not be tested in the courts by means of the writ of habeas corpus, when the prisoner claims citizenship and makes a showing that his claim is not frivolous, then obviously deportation of a resident may follow upon a purely executive order, whatever his race or place of birth." This case apparently is in part the basis of the distinction my colleagues draw between exclusion and deportation proceedings. But, just as obviously it seems to me to put the emphasis on the undisputed fact of residence in this country plus substantial evidentiary support of the claimed citizenship as requiring judicial determination.

To be sure, in the Ng Fung Ho case, the relators held entitled to a judicial hearing de novo were residents of the United States when the administrative proceedings began. But, in Quon Quon Poy v. Johnson, 273 U.S. 352, 358, 47 S.Ct. 346, 348, 71 L.Ed. 680, the latest case of exclusion to come before the Supreme Court where there was a claim of citizenship, the Court said a judicial hearing de novo was not required where the petitioner "had never resided in the United States." That statement plainly implies that the critical factor is not residence in this country at the time of institution of the administrative proceedings but the undisputable fact of residence here at any time in the past. The Supreme Court has never since held that a United States resident returning from a trip abroad was not entitled to a judicial determination of his claim to citizenship. Consistently, with regard to administrative proceedings in deportation cases, it has stated that "the claim of citizenship" is "a denial of an essential jurisdictional fact," [4] that where the claim is supported by substantial evidence, the claimant is "entitled to have his status finally determined by a judicial, as distinguished from an executive, tribunal,"[5] and, most recently, that, "The status of the relator must be judicially determined, because jurisdiction in the executive to order deportation exists only if the person arrested is an alien."[6] I cannot believe that the executive's jurisdiction over citizens extends to exclusion any more than deportation.

Deportation, of course, while not a criminal penalty, is certainly a deprivation of liberty, and "may result also in loss of both property and life, or of all that makes life worth living."[7] My colleagues mention "the practical reasons justifying strict proof in the case of deportation, which necessarily severs one from his home and present connections," and say that those reasons are "non-operative, or at least much less compelling, in the case of exclusion of nonresidents." If practical considerations control the right to a judicial determination of citizenship, the following

[4] Ng Fung Ho v. White, 259 U.S. 276, 282, 42 S.Ct. 492, 495, 66 L.Ed. 938.

[5] United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 152, 44 S.Ct. 54, 55, 68 L.Ed. 221.

[6] Kessler v. Strecker, 307 U.S. 22, 34, 59 S.Ct. 694, 700, 83 L.Ed. 1082.

[7] Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 495, 66 L.Ed. 938; Bridges v. Wixon, 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103. "It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country." Kwock Jan Fat v. White, 253 U.S. 454, 465, 40 S.Ct. 566, 570, 64 L.Ed. 1010.

facts in the case at bar seem to me to illustrate the fallacy of making a distinction between exclusion and deportation.

With the exception of several months spent as a fireman on British merchant ships and three years spent as an American prisoner of war in Germany after his ship was sunk by the Germans, relator has been a resident of the United States at least for a period of more than twenty years. If excluded now, he will literally become a man without a country, since the British authorities, after a police investigation conducted for the Governor of Bermuda, determined that he was not a citizen of Bermuda, and would not give him travel papers to go there.

Furthermore, the following circumstances which have led to his transfer from the "deportation" to the "exclusion" category add no weight to the position of those who would now deny him a judicial hearing: Relator was discharged from prison on November 11, 1939, after serving only ten years of a twenty-year sentence. A warrant of deportation was issued, directing his deportation to Bermuda, as a result of an American consular investigation in Bermuda mentioned by my colleagues which reported that Medeiros had been born there. But the deportation could not be effected because of the refusal of the British authorities, based on their own investigation of his citizenship, to issue travel documents. Relator was nevertheless induced by our government officers to sign an agreement to depart voluntarily from the United States[8] in lieu of deportation; and, according to his story, in need of a job, he shipped out on June 12, 1940, as a crew member of a British ship, in a berth secured for him by our Immigration authorities. After a voyage to England and a round trip from there to South Africa, he shipped on another ship returning to the United States, and during this trip was captured by the Germans and sent to a German prison camp, whence he was repatriated in 1945. In those circumstances, I regard as peculiarly untenable the distinction, between exclusion and deportation proceedings, grounded solely on the fact that relator was not a United States resident at the time when the exclusion proceedings began. When relator left the country, he would have been entitled to a judicial determination of his citizenship, according to all the cases. Because he voluntarily shipped out at a time when the authorities were unable to deport him, my colleagues are now depriving him of that right.

A trial de novo for relator would be but a futile gesture were there no room for difference of opinion about his citizenship. In the recent case of United States ex rel. Lapides v. Watkins, 2 Cir., 165 F.2d 1017, we held it unnecessary to consider whether relator by reason of his claim to citizenship was entitled to a trial de novo, since on the conceded facts relator had lost his citizenship, and no evidence additional to that before the board of special inquiry was offered. In this context, the following facts of the instant case are pertinent: The Board of Immigration Appeals order excluding relator apparently rested on the theory that Medeiros was in fact one Henry Brown, born in Bermuda, who had deserted from the British Navy and came to the United States in 1920 or 1921. (Relator had claimed that he had known this Henry Brown, but that Brown had died in Boston in 1927.) The same order, however, admitted that it was "extremely difficult to ascertain the true facts as to this man's identity," adding that no one had checked to find whether a Henry Brown had died in Boston in 1927, as claimed by relator. After the Board had made its order, and after the District Court had handed down its first opinion denying a writ of habeas corpus, relator's attorney discovered a Boston death certificate, dated 1927, of one Henry Brown who answered in every way the description given by relator. This important piece of evidence was never considered by the Immigration Board, nor by the District Court, since the latter founded its decision on the Board's finding of fact. The District Court, granting a trial de novo on the issue of citizenship, might, with the evidence now available to it, come to a

---

[8] If relator is in fact a citizen, such an agreement could not, of course, affect his rights.

conclusion different from the Board's. I think it should be given an opportunity and be required to exercise its independent judgment on the issue of fact.