UNITED STATES EX REL. BILOKUMSKY *v.* TOD, COMMISSIONER OF IMMIGRATION AT THE PORT OF NEW YORK, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 92.   Argued October 19, 1923.—Decided November 12, 1923.

1. In proceedings by the immigration authorities to deport a person charged with being an alien within the United States in violation of law, alienage is a jurisdictional fact, which must be found, to sustain an order of deportation. P. 153.
2. The burden of proving alienage in such proceedings (with a statutory exception in Chinese cases), is on the Government. *Id.*
3. When an essential finding of fact in such proceedings is unsupported by evidence, the courts may intervene by *habeas corpus.* *Id.*
4. Where a person, arrested for deportation as an alien within the United States in violation of law in that he had in his possession for distribution printed matter advocating overthrow of the Government by force or violence, upon being called and sworn as a witness, by the Government, to prove his alienage, stood mute,— *held,* that admission of alienage, which is not an element of the crime of sedition, would not have tended to incriminate him, and that the immigration officers might properly have inferred the fact of alienage from his silence. P. 154.
5. Deportation proceedings are civil in character and the person arrested may be compelled by legal process to testify whether he is an alien. P. 155.
6. Mere interrogation under oath by a government official of one lawfully in confinement is not a search and seizure. P. 155.
7. The rules of the Secretary of Labor concerning deportation cases do not require that a person under investigation prior to application for warrant of arrest, shall be advised of his right to have

counsel and to decline to answer questions, before being interrogated as to his alienage. P. 155.

8. The use in evidence in a deportation proceeding of an admission of his alienage made previously by the person held for deportation, while he was in custody of state authorities,—*held*, not to render the hearing unfair, in view of corroborative evidence and his failure to deny alienage at the hearing. P. 156.

9. A person held for deportation by immigration officials will not be discharged on *habeas corpus* merely because the warrant of arrest was issued without probable cause, if the later proceedings were regular and afford sufficient ground for his detention. P. 158.

Affirmed.

APPEAL from an order of the District Court discharging a writ of *habeas corpus* and remanding the relator and appellant to the custody of the Commissioner of Immigration.

*Mr. Walter Nelles,* with whom *Mr. Isaac Shorr* was on the briefs, for appellant.

*Mr. George Ross Hull,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Bilokumsky is said to have entered the United States in 1912. In May, 1921, he was arrested in deportation proceedings upon a warrant of the Secretary of Labor as being an alien within the United States in violation of law. The specific ground was having in his possession for the purpose of distribution printed matter which advocated the overthrow of the Government of the United States by force or violence. Act of October 16, 1918, c. 186, §§ 1 and 2, 40 Stat. 1012, as amended June 5, 1920, c. 251, 41 Stat. 1008. After a hearing, granted to enable him to show cause why he should not be deported, a warrant of deportation issued. While in the custody of the

Commissioner of Immigration at the Port of New York, he filed in the federal court this petition for a writ of *habeas corpus.* That court heard the case upon the return and a traverse thereto; dismissed the writ; remanded the relator to the custody of the Commissioner; allowed an appeal; and stayed deportation until further order. The case is here under § 238 of the Judicial Code, the claim being that the relator was denied rights guaranteed by the Fourth and Fifth Amendments to the Federal Constitution.

Prior to the application for the warrant of arrest in the deportation proceedings, Bilokumsky was confined to Moyamensing Prison, Philadelphia, on charges made by city authorities that he had violated the state sedition law. While there he was sworn and interrogated by an immigration inspector who took a stenographic report of the examination. In answer to questions so put he admitted that he was an alien, but denied that he had done anything which rendered him liable to deportation. There is nothing in the examination which suggests that Bilokumsky made his statement because of threats or promises of favor; and there was no evidence that the statement was an involuntary one, unless compulsion is to be inferred from the fact that he was at the time in custody; that city and federal authorities were then co-operating "with a view to ridding this country of undesirables"; that the prosecution under the state law was dropped soon after the institution of the deportation proceedings; that he was not then represented by counsel; and that he was not apprised by the inspector, either that he was entitled to be so represented or that he was not obliged to answer.

At the hearing under the warrant of the Secretary of Labor all facts necessary to establish that Bilokumsky had in his possession for purpose of distribution printed matter which advocated the overthrow of the Govern-

ment were proved by evidence to which there was no objection. To prove alienage the inspector called Bilokumsky as a witness. He was sworn; but when questioned by the immigration inspector, under advice of counsel, stood mute, refusing even to state his name. After his refusal to answer, the report of his examination in Moyamensing Prison was introduced, although duly objected to by counsel. He did not testify on his own behalf; nor did he, or his counsel, make the claim, at the hearing, that he is a citizen of the United States. The rules then in force dealing with the conduct of such hearings are copied in the margin.[1] So far as appears these were fully complied with. It is conceded that, if the fact of alienage was legally established, there was both probable cause for issuing the original warrant of arrest and ample evidence at the hearing to justify a finding that relator was within the United States in violation of law. The contention is that there was no legal evidence of alienage.

If, in the deportation proceedings, Bilokumsky had claimed that he was a citizen and had supported the claim by substantial evidence, he would have been entitled to have his status finally determined by a judicial, as distinguished from an executive, tribunal. *Ng Fung Ho* v.

---

[1] "Rule 22, Subd. 5(a). Upon receipt of a telegraphic or written warrant of arrest the alien shall be taken before the person or persons therein named or described and granted a hearing to enable him to show cause, if any there be, why he should not be deported. If the alien is unable to speak or understand English, an interpreter should be employed where practicable."

"Rule 22, Subd. 5(b). At the beginning of the hearing under the warrant of arrest the alien shall be allowed to inspect the warrant of arrest and all the evidence on which it was issued, and shall be apprised that he may be represented by counsel. The alien shall be required then and there to state whether he desires counsel or waives the same, and his reply shall be entered on the record. If counsel be selected, he shall be permitted to be present during the conduct of the hearing." Compare *Colyer* v. *Skeffington*, 265 Fed. 17, 46.

*White,* 259 U. S. 276, 281. But he made no such claim at that time; nor does he now contend, by allegation in his petition for *habeas corpus,* or otherwise, that he is a citizen of the United States. He rests his claim to relief on an entirely different ground. He asserts that, because of the manner in which the evidence of alienage was procured, the warrant of deportation is a nullity. He argues that alienage is essential to jurisdiction; that the Government has the burden of establishing the fact; that it can be established only by legal evidence; that his examination while in prison is the only evidence introduced for that purpose; that its procurement involved both an unlawful search and seizure and a violation of the rules of the Department; that since it was illegally procured it was not legal evidence; and, hence, that the order is void. Its nullity is urged on three grounds. Because the order is unsupported by legal evidence; because the hearing was unfair; and because the original warrant issued without probable cause.

It is true that alienage is a jurisdictional fact; and that an order of deportation must be predicated upon a finding of that fact. *United States* v. *Sing Tuck,* 194 U. S. 161, 167. It is true that the burden of proving alienage rests upon the Government. For the statutory provision which puts upon the person arrested in deportation proceedings the burden of establishing his right to remain in this country applies only to persons of the Chinese race. See *Ng Fung Ho* v. *White, supra,* p. 283. (Compare Immigration Rules of May 1, 1917, Rule 8.) It is also true that if the Department makes a finding of an essential fact which is unsupported by evidence, the court may intervene by the writ of *habeas corpus. Zakonaite* v. *Wolf,* 226 U. S. 272, 274–5. But it is not true that, if the report of Bilokumsky's examination be eliminated, there was no evidence of alienage at the hearing. Conduct which forms a basis for inference is evidence. Silence

is often evidence of the most persuasive character. *Runkle* v. *Burnham,* 153 U. S. 216, 225; *Kirby* v. *Tallmadge,* 160 U. S. 379, 383. Compare *Quock Ting* v. *United States,* 140 U. S. 417, 420. Bilokumsky was present at the hearing, personally and by counsel. The ground for deportation involved a charge of acts which might have been made the basis of a serious criminal prosecution. Criminal Code, § 6. If Bilokumsky was a citizen, inquiry into the facts was immaterial; and the whole proceeding must have fallen. He, presumably, knew whether or not he was a citizen. Since alienage is not an element of the crime of sedition, testifying concerning his status could not have had a tendency to incriminate him. There was strong reason why he should have asserted citizenship, if there was any basis in fact for such a contention. Under these circumstances his failure to claim that he was a citizen and his refusal to testify on this subject had a tendency to prove that he was an alien.

Conduct is often capable of several interpretations; and caution should be exercised in drawing inferences from it. But there is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak. Deportation proceedings are civil in their nature. *Fong Yue Ting* v. *United States,* 149 U. S. 698, 730; *Bugajewitz* v. *Adams,* 228 U. S. 585, 591. Neither statute nor rule requires that matter alleged in the warrant of arrest shall, in the absence of an express admission, be taken to be denied. A person arrested on the preliminary warrant is not protected by a presumption of citizenship comparable to the presumption of innocence in a criminal case. There is no provision which forbids drawing an adverse inference from the fact of standing mute. It is not unreasonable to assume that one who may wish to challenge the executive's jurisdiction in the

courts will not refrain from asserting in the proceedings before the executive the facts on which he relies. To defeat deportation it is not always enough for the person arrested to stand mute at the hearing and put the Government upon its proof. Compare *United States* v. *Sing Tuck*, 194 U. S. 161, 169. Since the proceeding was not a criminal one, Bilokumsky might have been compelled by legal process to testify whether or not he was an alien.[2] The Government was not obliged to adopt that course.

The introduction of Bilokumsky's examination as evidence did not render the hearing unfair. The specific grounds urged for holding it so are that the evidence was obtained by an illegal search and seizure and in violation of the rules of the Department. Both contentions are unfounded. It may be assumed that evidence obtained by the Department through an illegal search and seizure cannot be made the basis of a finding in deportation proceedings. Compare *Silverthorne Lumber Co.* v. *United States*, 251 U. S. 385; *Gouled* v. *United States*, 255 U. S. 298. But mere interrogation under oath by a Government official of one lawfully in confinement is not a search and seizure. It may be assumed that one under investigation with a view to deportation is legally entitled to insist upon the observance of rules promulgated by the Secretary pursuant to law.[3] But no rule is shown which prohibits interrogation without apprising the person under investigation that he is entitled to refuse to answer

---

[2] See *United States* v. *Hung Chang*, 134 Fed. 19; *Low Foon Yin* v. *United States*, 145 Fed. 791; *Law Chin Woon* v. *United States*, 147 Fed. 227; *Tom Wah* v. *United States*, 163 Fed. 1008; *In re Chan Foo Lin*, 243 Fed. 137, 140; *United States* v. *Brooks*, 284 Fed. 908, 910. Act of Feb. 5, 1917, c. 29, § 16, 39 Stat. 874.

[3] Compare *Whitfield* v. *Hanges*, 222 Fed. 745, 749; *Jouras* v. *Allen*, 222 Fed. 756, 758; *Mah Shee* v. *White*, 242 Fed. 868, 871; *Lum Hoy Kee* v. *Johnson*, 281 Fed. 872; *Sibray* v. *United States*, 282 Fed. 795, 797; *Ex parte Low Joe*, 287 Fed. 545; *United States* v. *Dunton*, 288 Fed. 959.

and to have counsel. The examination here complained
of was conducted before there was an application for the
warrant of arrest. There is neither in Rule 22, sub-
division 3, which relates to the application for a warrant,[4]
nor elsewhere in the rules, any provision which deals with
interrogation prior to the hearing. Rule 22, subdivision
5(a) and (b), apply only to the proceedings after an
arrest has been made. The careful provision which the
rules make to ensure to the person arrested the benefit of
counsel and access to the Government's evidence at the
hearing leads to the conclusion that the omission of any
similar provision governing earlier stages in the proceed-
ing was intentional. In the absence of a rule forbidding
interrogation, or requiring the presence of counsel, mere
examination in his absence does not render the hearing
unfair. *Low Wah Suey v. Backus,* 225 U. S. 460, 470.

It is urged that the admission of Bilokumsky's exam-
ination renders the hearing unfair because it is incon-
sistent with fundamental principles of justice embraced
within the conception of due process of law. The argu-
ment is that if a judgment of deportation is to rest upon
admissions attributable to the person to be deported, the
admissions must have been made by him as a free agent
and under circumstances which raise no doubt whether
they were in fact made. Deportation is a process of such
serious moment that on all controverted matters the ex-
ecutive officers should consider the evidence with close
scrutiny. But here there was no denial of alienage; and
a landing certificate was introduced by the Government
which, when connected with the statement in Bilokum-

---

[4] " Rule 22, Subd. 3. *Application for warrant of arrest.*—The ap-
plication must state facts showing *prima facie* that the alien comes
within one or more of the classes subject to deportation after entry,
and, except in cases in which the burden of proof is upon the alien
(Chinese) involved, should be accompanied by some substantial sup-
porting evidence."

sky's examination, tended in some respects to corroborate it. Moreover, the statement that one is an alien is not the confession of a crime. Except in case of Chinese, or other Asiatics, alienage is a condition, not a cause, of deportation. So far as appears, there was nothing in the circumstances under which Bilokumsky was examined which would have rendered his answer inadmissible even in a criminal case. The mere fact that it was given while he was in confinement would not make it so.[5]  And since deportation proceedings are in their nature civil, the rule excluding involuntary confessions could have no application. *Newhall* v. *Jenkins*, 2 Gray, 562, 563. Moreover, a hearing granted does not cease to be fair, merely because rules of evidence and of procedure applicable in judicial proceedings have not been strictly followed by the executive; or because some evidence has been improperly rejected or received.[6]  *Tang Tun* v. *Edsell*, 223 U. S. 673, 681. To render a hearing unfair the defect, or the practice complained of, must have been such as might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process. *Chin Yow* v. *United States*, 208 U. S. 8; *Kwock Jan Fat* v. *White*, 253 U. S. 454, 459. Compare *Interstate Commerce Commission* v. *Louisville & Nashville R. R. Co.*, 227 U. S. 88, 91.

---

[5] *Hopt* v. *Utah*, 110 U. S. 574, 585; *Sparf and Hansen* v. *United States*, 156 U. S. 51, 55; *Pierce* v. *United States*, 160 U. S. 355, 357; *Wilson* v. *United States*, 162 U. S. 613, 623; *Hardy* v. *United States*, 186 U. S. 224, 228–230. Compare *Powers* v. *United States*, 223 U. S. 303.

[6] Compare *United States* v. *Uhl*, 215 Fed. 573, 574, 576; *Choy Gum* v. *Backus*, 223 Fed. 487, 492–3; *Sibray* v. *United States*, 227 Fed. 1, 7; *United States* v. *Uhl*, 266 Fed. 34, 39; *United States* v. *Uhl*, 266 Fed. 646; *Morrell* v. *Baker*, 270 Fed. 577; *United States* v. *Uhl*, 271 Fed. 676, 677; *Chin Shee* v. *White*, 273 Fed. 801, 805; *United States* v. *Wallis*, 279 Fed. 401, 403; *Moy Yoke Shue* v. *Johnson*, 290 Fed. 621.

What has been said disposes also of the broader contention that the whole deportation proceeding was void *ab initio*, because without the report of Bilokumsky's examination there was lacking probable cause for issuance of the warrant of arrest. Irregularities on the part of the Government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law. "A writ of *habeas corpus* is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *Nishimura Ekiu* v. *United States,* 142 U. S. 651, 662; *Iasigi* v. *Van de Carr,* 166 U. S. 391; *Stallings* v. *Splain,* 253 U. S. 339, 343.

*Affirmed.*