UNITED STATES ex rel. VAJTAUER v. CURRAN, Commissioner of Immigration.*

(District Court, S. D. New York. April 20, 1925.)

1. Aliens ⚖═40.

Immigration Law, § 23 (Comp. St. 4289¾kk), requiring alien in deportation proceeding to establish lawful entry and right to remain *held* applicable to second hearing in proceeding pending before enactment.

2. Aliens ⚖═54(7).

Refusal of alien, relying solely on passport, to furnish any evidence that he is not within excluded classes, does not meet burden of proof required by Immigration Law, § 23 (Comp. St. § 4289¾kk), or require government to go further, and findings of fact on inferences based on such failure to testify will not be disturbed.

Habeas Corpus. Application by the United States, on the relation of Emanuel Vajtauer, against Henry H. Curran, Commissioner of Immigration, Ellis Island, New York Harbor. Writ dismissed, and relator remanded.

Isaac Shorr, of New York City (Walter H. Pollak, of New York City, of counsel), for relator.

Emory R. Buckner, U. S. Atty., of New York City (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for respondent.

AUGUSTUS N. HAND, District Judge. The relator, an alien and citizen of Czecho-Slovakia, arrived at the port of New York, on the steamship Minnekahda on December 1, 1923. Upon an anonymous complaint, signed "A Union Man," to the effect that he "is inciting the people against the government and convincing them that their only hope is in the communist workers' party of

*Judgment affirmed 47 S. Ct. 302, 71 L. Ed. —.

America, who will force the people from the capitalist oppression," a warrant was issued on April 4, 1924, by the Assistant Secretary of Labor, that the relator be taken into custody and granted a hearing to show cause why he should not be deported.

After a hearing, which began on May 14, 1924, and was concluded on August 27, 1924, a warrant of deportation was issued by the Acting Secretary of Labor, on the ground that the relator (1) believed in and advised the overthrow of the government of the United States; (2) wrote, published, or had in his possession for circulation written or printed matter advocating opposition to all organized government; (3) wrote, published, or had in his possession for circulation written or printed matter advocating the overthrow by force and violence of the government of the United States.

Before the second hearing the new Immigration Law went into effect, section 23 (Comp. St. § 4289¾kk) of which provides as follows:

"Whenever any alien attempts to enter the United States the burden of proof shall be upon such alien to establish that he is not subject to exclusion under any provision of the immigration laws; and in any deportation proceeding against any alien the burden of proof shall be upon such alien to show that he entered the United States lawfully, and the time, place and manner of such entry into the United States, but in presenting such proof he shall be entitled to the production of his immigration visa, if any, or of other documents concerning such entry, in the custody of the Department of Labor."

[1, 2] The foregoing section created a new rule of procedure in immigration cases. I cannot see that the application of it to any pending proceeding was illegal. The hearing held May 14, 1924, was not closed, and when it was continued on August 27 the inspector asked the attorney for the relator:

"Q. Do you desire to place the alien under oath and permit his examination? A. No; I will file a supplemental brief in ten days or two weeks."

In other words, the relator persisted in the position he had taken at the first session of refusing to be examined as to his identity; i. e., whether he was the person who wrote Exhibit A, a pamphlet on the Revolution and Dictatorship of the Proletariat, from which portions purporting to be translations were read to him, whether he delivered a speech at the Spravedvost Hall on March 21, 1924, in Chicago, of which an alleged account was produced; whether he was a

member of the Communist party, and whether he was the author of certain remarks set forth in the report of the Fourth Congress of the Communist International held at Moscow.

No reason was given for refusal to answer these questions, but I shall assume that the refusal was in the exercise of the relator's constitutional rights. I am also, in that event, ready to go the length of saying that the remarks, if made by the relator at the Moscow Congress, were not evidential of much of anything, and that the Chicago speech was not properly proved, and that he was not identified as the author of the pamphlet, Exhibit A. It is true that, if the relator was justified in claiming his constitutional privilege, no inference can be drawn against him for exercising that right. It is equally true, however, that such a refusal to answer cannot take the place of any evidence which he is required to produce in order to avoid deportation. He has the burden of showing that he entered the United States lawfully; that burden was not met when he refused to be examined. We do not know what the examination might have disclosed, but a refusal to furnish any evidence for whatever reason, and a reliance solely on his passport, does not meet the burden of proof, or require the government to go further.

It is to be remembered that he is the respondent in a deportation proceeding, in which he had the burden of showing that he was not among the excluded classes. If the failure to assert his constitutional privilege in terms be treated as placing the relator merely in the position of a witness who without justification refuses to answer, then there is some basis for the finding of the department that the relator was the author of the various utterances and publications attributed to him and some basis for the other findings. Bilokumsky v. Tod, 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221. And the court would be without jurisdiction to disturb them, because based, not only on a failure of the relator to go forward with proof, but on affirmative evidence against him.

The writ is dismissed, and the relator remanded.