UNITED STATES ex rel. BORIC v. MARSHALL, District Director of Immigration.
No. 72.

District Court, W. D. Pennsylvania.
April 7, 1933.

Appeal dismissed, —— F.(2d) ——.

Jacob Seligsohn and William D. Grimes, both of Pittsburgh, Pa., for Franjo Borich.

Louis E. Graham, U. S. Atty., and Lloyd W. Bryan, Asst. U. S. Atty., both of Pittsburgh, Pa., for respondent.

GIBSON, District Judge.

The relator, Franjo Borich, was held by William H. Marshall, district director of immigration, upon a departmental warrant ordering his deportation. Pursuant to his petition a writ of habeas corpus issued upon the district director, who has filed his return, wherein he asserts that he legally has custody of said Borich by reason of a warrant of the Department of Labor which avers that Borich "has been found in the United States in violation of the Immigration Act, * * * in that after entry he became a member of one or more of the classes of aliens enumerated in section 1 of the aforementioned act, as amended [see 8 USCA § 137 (c)], to wit: Aliens who are members of an organization, association, society, or group that believes in, advises, advocates, and teaches, the overthrow by force and violence of the Government of the United States."

Upon hearing it developed that the relator had been arrested upon a departmental warrant, and had been given a hearing before an immigration inspector upon several charges, the principal one of which was that he was then a member of a body which advocated the overthrow of the government of the United States by force and violence. After a number of hearings, a new charge was added, and the relator was given a hearing upon it. The charge was the one set forth in the present deportation warrant. The contention of the relator is that said hearing was unfair and that it produced no evidence sufficient to form a basis for the warrant under which he is held in custody. He asserts that the hearing upon the existing charge was illegal, in that the Department of Labor failed to issue a warrant upon the charge, but relied upon the original one, setting forth other charges. He also contends that the hearing was unfair, for the reason that the Department of Labor, through its agents, inspectors, and examiners, performed the functions of prosecutor, marshal, and judge.

█ The contention last mentioned may be passed over with but slight comment. It is based upon certain criticisms of the procedure recited in the report of the National Commission on Law Observance and Enforcement relative to the enforcement of the deportation laws of the United States. Such criticism is doubtless worthy of the consideration of Congress, but, by existing laws, that body has confided the deportation of aliens illegally in the United States to the Department of Labor, and the Supreme Court of the United States has, in the past, affirmed, as legal, many deportations based upon hearings similar to the one given this relator. Unless and until Congress changes existing laws and prescribes other tribunals and other methods, fair hearings before, and properly supported decisions by, officials of the Department of Labor may not be declared illegal.

█ As to the failure of the Department of Labor to issue a new warrant upon the added charge, also little comment is needed. The function of a warrant is to produce a defendant or respondent before the trial tribunal. Even in a criminal charge, if a defendant be already before the court, it is not necessary that a warrant issue for his production. He may be required to plead to an indictment without additional arrest. It will be remembered that a deportation is a civil, and not a criminal, matter, and the rules in respect to such proceeding should not be more strict than in criminal cases. The procedure in the instant matter was pursuant to paragraph 2 of the rules of procedure provided by the Department of Labor in respect to the deportation of aliens. The alien was summoned before the officer, who had held other hearings, was notified of the additional charge against him, which had been disclosed by prior testimony, and was given full opportunity to be heard thereon. Even if the failure to issue a new warrant were regarded as an irregularity in procedure, it was cured by the later regular proceedings. Bilokumsky v. Tod, 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221.

██ An examination of the testimony introduced at the hearing leads us to the conclusion that the evidence was sufficient to sustain the finding recited in the deportation warrant. It appeared, by admission of the relator, that he was an alien, also that he had been a member of the National Miners' Union from 1928 and thereafter; that from 1930 to date he had been national secretary of that organization, and that he had been editor of the Mine Worker, the official organ of the National Miners' Union, which had prominently printed thereon, in each edition, the words: "Affiliated to the Trade Union Unity League." At the hearing was offered in evidence a pamphlet purporting to be the constitution of the National Miners' Union. The relator contends that the pamphlet was not

properly identified as being such constitution. This contention does not seem to us to be well founded. A number of members of the Union, some of them local officers of it, testified that the pamphlet was a copy of the constitution in existence at the time they joined the Union, the dates of the admissions of these witnesses being subsequent to the connection of the relator with the Union and prior to March 20, 1932, when relator claims a new constitution was adopted. Above all, the relator, himself, upon the pamphlet being exhibited to him, failed to deny its existence as the constitution of the National Miners' Union prior to March 20, 1932. The alleged constitution, in its first article, asserts that the National Miners' Union declares "adherence to the program, principles and statutes of the Red International of Labor Unions." Other documents offered in evidence tend to establish the fact that the National Miners' Union was affiliated with the Trade Union Unity League. It is a matter of common knowledge that the Red International of Labor Unions, and its American branch, Trade Union Unity League, is a body which is opposed to organized government and favors the overthrow of the government of the United States by force. In numerous decisions by courts judicial notice has been taken of this fact, and the Secretary of Labor has fully as much right to accept common knowledge in this respect as have the courts. See Murdoch v. Clark (C. C. A.) 53 F.(2d) 155; United States ex rel. Yokinen v. Commissioner (C. C. A.) 57 F.(2d) 707; Kjar v. Doak (C. C. A.) 61 F.(2d) 566; United States v. Tapolcsanyi (C. C. A.) 40 F.(2d) 255.

It appearing to the court that the hearing before the immigration officer in the instant case was in accordance with the ordinary practice in deportation proceedings, and that there was sufficient evidence to sustain the charge set forth in the deportation warrant, the relator must be remanded to the custody of the district director of immigration.