**UNITED STATES ex rel. KATALIAKOS v. JORDAN, District Director.**

No. 9992.

United States Court of Appeals
Seventh Circuit.

Feb. 2, 1950.

Johan Waage, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Attorney, John P. Lulinski, Asst. U. S. Attorney, Chicago, Ill., Maurice C. Handelman, Asst. U. S. Attorney, John M. McWhorter, Chicago, Ill., for appellee.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from an order quashing the writ of habeas corpus and remanding the petitioner to the custody of the respondent, Andrew Jordan, District Director of Immigration and Naturalization Service.

The petitioner insists that the warrant for his arrest and deportation was invalid for the following reasons: 1, The order for the deportation of the petitioner was not sustained by any evidence in the hearing; 2, That the petitioner was not afforded a full and fair hearing; 3, That no valid legal evidence was adduced at the hearing before the Presiding Inspector; and 4, That the petitioner was denied counsel and the right to cross-examine witnesses.

The order for deportation was based on a finding that the petitioner, an alien, was managing a house of prostitution and, therefore, subject to deportation under Section 19 of the Immigration Act, 8 U.S. C.A. § 155(a). That section provides that: "* * * any alien who shall be found an inmate of or connected with the management of a house of prostitution * * * shall, upon the warrant of the Attorney General, be taken into custody and deported."

The petitioner entered this country September 21, 1909. From December, 1942 to March, 1945, the petitioner operated an establishment known as the Ohio Hotel located at 69 West Ohio Street in the city of Chicago. All of the rooms except room 9 were occupied by permanent roomers. Room 9 was an inside room with only artificial light and without ventilation and could not be rented on a permanent basis.

On two occasions, in March, 1945, the petitioner was arrested for keeping a house of prostitution. In each case he appeared in person, was represented by counsel and

found guilty. In one case he was sentenced to, and served, a thirty day term in the House of Correction and in the other case he was fined. In each of these cases the charge on which the conviction was based was allegedly defective in that it was not on that part of the Illinois Statute which pertains to keeping a house of prostitution.

In November, 1944, in connection with his pending petition for naturalization, he appeared before Irving I. Freedman, Examiner, and was questioned under oath. His testimony was reduced to writing and he then signed the same, stating that the questions and answers constituted a true and correct statement of the testimony. Before taking that examination the examiner informed petitioner that any statement he made would be used against him in any proceeding that the government might see fit to take, either criminal, civil or deportation; and that any statement he might make should be voluntary on his part. In that examination petitioner testified that he knowingly permitted the use of room 9 in his hotel for purposes of prostitution; that he made a charge for the use of the room for that purpose; and that he permitted strange men to register for the room, as husband and wife, with women who were permanent guests in his hotel. At the conclusion of this examination he stated that his statements were made freely and of his own will.

On April 10, 1945, a warrant was issued for petitioner's arrest, on the ground that he had been found managing a house of prostitution in violation of the immigration laws. The warrant directed the District Director of Immigration and Naturalization to grant petitioner a hearing to show cause why he should not be deported in conformity with law. Such a hearing was held on May 25, 1945, before Presiding Inspector Ralph W. Lockwood with E. W. Krause, Examining Inspector, J. S. Epstein, stenotypist, and the petitioner, present. Before the petitioner was interrogated in that hearing he said, in answer to questions by the Presiding Inspector, that he thoroughly understood the charge contained in the warrant for his arrest; that

he did not desire to be represented by counsel and waived his right to counsel; and that he was ready and willing to proceed with the hearing.

In that hearing petitioner again described how room 9 in his hotel had been used for the purpose of prostitution and by his answers and statements clearly demonstrated that he understood the meaning of "prostitute" and "prostitution". In the course of that hearing the sworn statement he had made before the Naturalization Examiner in November, 1944, was shown to petitioner and he stated that he had read the statement and that the contents of the statement had been made known to him before he signed it.

There was also introduced as evidence in that hearing certified copies of the informations and judgments in the two Municipal Court convictions.

Later, after petitioner apparently realized the significance of the deportation hearing, he procured the services of an attorney, petitioned for, and was granted, the right to reopen the hearing. He was then furnished a copy of the first hearing and the exhibits attached thereto. In the reopened hearing the petitioner insisted that in the former hearing he had not understood the meaning of the words "prostitution" and "prostitute"; that his failure to understand was responsible for his damaging admissions; and that he did not knowingly permit prostitution in his hotel.

This reopened hearing was held July 30, 1946. In this hearing the petitioner was shown the transcript of the examination before Examiner Freedman; the examination was read to him and he was asked if there were any statements which he made before Examiner Freedman at variance with the truth. He showed that he understood this question by correcting one statement as to his address and when asked if there was anything else his answer was, "No". Petitioner's counsel then said that he had no objection or comment to make regarding the Freedman examination.

At the hearing the petitioner used several witnesses to testify as to his reputation. At the conclusion of this hearing, counsel

for petitioner, on being asked whether he was satisfied that this hearing had been fair and that his client had been afforded all protection accorded him by law, answered, "I certainly do, very fair."

The entire proceeding before the Presiding Inspector was reviewed by the Board of Immigration Appeals and on August 29, 1947, the Board concurred in the findings and conclusions and ordered deportation.

■ The petitioner complains of the fact that, in the hearing on deportation, his testimony before Immigration Examiner Freedman and the transcripts of the two convictions in the Municipal Court of Chicago were introduced in evidence. The admission of this evidence did not invalidate the order and warrant for deportation unless the admission of such evidence resulted in a denial of justice to the accused. The courts have repeatedly held that in such a hearing the strict rules of evidence applicable in judicial proceedings need not be followed. U. S. ex rel. Doukas v. Wiley et al., 7 Cir., 160 F.2d 92, 94.

■ As to petitioner's statements under oath to the Naturalization Examiner this court held in Reynolds v. U. S. ex rel. Koleff, 7 Cir., 70 F.2d 39, at page 40, that a written statement made by an alien freely and without previous threat or coercion is available in a deportation proceeding. See, also, U. S. ex rel. Bilokumsky v. Tod et al., 263 U.S. 149, 155, 44 S.Ct. 54, 68 L. Ed. 221 and Ungar v. Seaman, 8 Cir., 4 F.2d 80. It is clear from petitioner's own admissions that he made this statement freely and without any coercion or intimidation. Evidence of the petitioner's two convictions in the Chicago Municipal Court, even though the Information may have been defective, was not evidence which denied justice to the petitioner. He

and his attorney accepted the convictions and he served the penalty, all without any objection. His own testimony in the deportation proceeding was sufficient to support the order without regard to the evidence of these two convictions.

■ The chief complaint of the petitioner was that he did not understand the meaning of the word "prostitution" when he appeared before the Naturalization Examiner and when he first appeared before the Presiding Inspector. We are convinced, however, that any one reading this record, would come to the conclusion that he fully understood these terms and that his alleged failure to understand their meaning was an after-thought to which he resorted in a vain attempt to escape the consequences of his having maintained a house of prostitution. If we believe the statements of this petitioner, which he made before the Naturalization Examiner and in his first hearing on deportation, as we must, we find adequate evidence to sustain the finding and order of the immigration authorities.

Counsel for appellant, on the last page of appellant's brief, states that, "On the question of the fairness of the officers who conducted the various examinations of petitioner, we of course, do not imply that these officials from the lowest to the highest intended to be unfair to the petitioner." The record of all of these proceedings fails to show any particular in which these officials were unfair to petitioner.

The various authorities cited by plaintiff are not applicable to the factual situation which we find here.

We hold that the warrant for petitioner's deportation was valid and that the order of the lower court did not constitute error.

Affirmed.