David SMITH and Everette Smith, Relators,

v.

Raymond A. MORRIS, Immigration and Naturalization Service, District Director, Respondent.

Civ. A. No. 77–3625.

United States District Court, E. D. Pennsylvania.

Nov. 23, 1977.

Richard Steel, Philadelphia, Pa., for relators.

Robert S. Forster, Jr., Asst. U. S. Atty., Philadelphia, Pa., for respondent.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

Petitioners were arrested on November 10, 1976, by officers of the Immigration and Naturalization Service, acting without a warrant. Shortly thereafter, they were ordered to show cause why they should not be deported, as aliens who had overstayed their visitors period.

A deportation hearing was held. Petitioners moved to suppress evidence (on the theory that their arrest without a warrant was illegal, and that their Fourth Amendment rights had been violated), and also sought a separate hearing on the Motion to Suppress. The motion for a separate hearing was denied, as was the Motion to Suppress. Initially, on advice of counsel, petitioners declined to make any response to the show cause order. However, when the immigration Judge ordered them to respond, they did so, conceding deportability. In view of this concession, no evidence was presented at the hearing, and a deportation order was entered. Administrative appeals have been exhausted, and the case is now before me on petitioners' application for a writ of habeas corpus.

### I. *Jurisdiction*

■ The Government asserts that this Court is without jurisdiction. I am inclined to agree. Petitioners are challenging a deportation order entered by an immigration Judge, affirmed by the Board of Immigration Appeals. These proceedings were indubitably had under § 242(b) of the Immigration and Nationality Act. Direct review in the Court of Appeals is the "sole and exclusive procedure" for judicial review of such orders. 8 U.S.C. § 1105a(a). *Compare Foti v. Immigration and Naturalization Service*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963) with *Cheng Fan Kwok v. Immigration and Naturalization Service*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968).

Admittedly, however, there is a certain murkiness in the statutory language ("except that . . . . (9) any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings"). It is doubtful that Congress intended, by inserting this exception, to undo entirely the mandate for exclusive review by the Court of Appeals. It may be, as the Government contends, that district court review by habeas corpus is limited to discretionary determinations not made in connection with deportation proceedings themselves; or it may be that such review is limited to cases of actual physical custody. The determinations which petitioners seek to challenge in the present case were integrally related to the deportation hearing itself. And it does not appear that the petitioners are in actual custody.

### II. *The Merits*

Because of lingering uncertainties on the jurisdictional issues, I believe it is preferable to express this Court's views on the merits. If my conclusion that this Court lacks jurisdiction is correct, discussion of the merits will prove to have been superfluous. But if I am incorrect, and it develops that this Court does have jurisdiction, then an alternative disposition on the merits will expedite the final disposition of this case.

Petitioners contend that the INS agents obtained entrance to petitioner's residence by trick, engaged in an unlawful search, in violation of the Fourth Amendment, and thereby learned that petitioners were indeed aliens who had overstayed their visits. Thereupon, the agents arrested the petitioners. Petitioners accordingly contend that their arrests were illegal, and that all evidence obtained in conjunction with the arrests should have been suppressed.

In advance of the hearing before the immigration Judge, petitioners filed a written motion to suppress. This seems to have confused everybody. Counsel for the Government then sought to have the motion dismissed, because of its legal insufficiency. The argument was that the motion did not specify what items of evidence should be suppressed, nor was it supported by affidavit. The ruling of the immigration Judge is not entirely clear. Obviously, he did not grant the motion to suppress;

but there is room for argument as to whether he considered and denied it, or dismissed it for legal insufficiency.

The hearing then proceeded. Initially, petitioners steadfastly refused to answer any questions, on advice of counsel. But when the immigration Judge ordered them to respond (and informed them that their silence would give rise to adverse inferences), petitioners admitted that they were aliens who had entered this country in 1972 on six months' visitor's permits. Since these admissions established deportability, no further evidence was required, and none was presented. However, the Government did produce, and had the petitioners identify, the petitioners' copies of their respective visitation permits, which had been seized at the time of the arrests (petitioners contend, unlawfully). This corroborative evidence was examined by the immigration Judge, but was withdrawn from evidence by Government counsel.

On appeal to the Board of Immigration Appeals, the Government filed a brief seeking guidance as to the correct method of handling motions to suppress evidence made before immigration judges. The Board declined to provide that guidance, ruling merely that the deportation order, based upon petitioners' admissions, was valid.

The Supreme Court long ago adopted the view that an illegal arrest does not invalidate subsequent deportation proceedings. *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158, 44 S.Ct. 54, 68 L.Ed. 221 (1923). In *Avila-Gallegos v. INS*, 525 F.2d 666 (2d Cir. 1975), the Court stated:

"Regardless of the legality of his arrest, since petitioner's deportation hearing testimony, standing alone, was sufficient to support the order of deportation, his petition for reversal of such order and dismissal and termination of the deportation proceedings should be denied."

In *Guzman-Flores v. INS*, 496 F.2d 1245 (7th Cir. 1974), the Court stated:

"Clearly petitioners herein have admitted their deportability at the deportation proceedings. The Service did not rely on any evidence seized at the time of their arrests by local authorities to establish their deportability. Thus, even if those arrests were illegal, this does not invalidate the subsequent deportation proceedings." (At p. 1248.)

█ In light of these appellate precedents, petitioners' attack upon their deportation order is doomed to failure. The only distinction between the present case and the cited cases which counsel have been able to suggest is that here the petitioners raise, not merely the constitutional violation, but defects in the procedure by which these alleged violations were considered by the immigration Judge. It is argued that the petitioners were entitled to know, in advance of the hearing, that the illegally seized evidence would not be used against them. But the evidence complained of was not in fact introduced, so the issue is moot.

█ The basic difficulty with petitioners' argument is that it obscures the distinctions between a deportation proceeding and a criminal proceeding. In the latter, the question is whether or not a certain event has occurred; moreover, the Fourth Amendment is fully applicable. In deportation proceedings, the issues are merely identity and status; the consequences are not penal in nature; and the ultimate outcome cannot possibly be tainted by earlier unlawful actions by INS agents. That is to say, application of an exclusionary rule could not have any significant impact on the result of the deportation proceeding. Therefore, assuming the Fourth Amendment is fully applicable to the activities of INS agents, and assuming that aliens are entitled to the full protection afforded by the Fourth Amendment, it would nevertheless seem that the exclusionary rule serves no useful purpose in any deportation proceeding in which the decision does not depend upon proof of specific events, but merely on proof of status. (The possible applicability of the exclusionary rule in cases where past conduct is crucial—e. g., immoral conduct, criminal conviction, falsification—need not now be considered.)

Accordingly, if it should be determined that this Court has jurisdiction in this case, I have concluded that the petitions should be denied on the merits.